THE STATE OF OHIO, APPELLEE, *v.* SWIDAS, APPELLANT.

[Cite as *State v. Swidas,* 133 Ohio St.3d 460, 2012-Ohio-4638.]

*Criminal law—R.C. 2941.146—Firearm specification—Discharging a firearm from a motor vehicle—No substantial physical connection with the motor vehicle.*

(No. 2011-0244—Submitted November 16, 2011—Decided October 11, 2012.)

APPEAL from the Court of Appeals for Lake County,

No. 2009-L-104, 2010-Ohio-6436.

_____

PFEIFER, J.

{¶ 1} R.C. 2941.146(A) contains a firearm specification that adds a five-year prison term when a defendant commits a felony that includes the element of purposely or knowingly causing or attempting to cause the death of or physical harm to another, if the crime "was committed by discharging a firearm from a motor vehicle other than a manufactured home." In this case, we hold that R.C. 2941.146 is not applicable when a person fires a weapon while standing completely outside a motor vehicle.

**Factual and Procedural Background**

{¶ 2} Defendant-appellant, Michael Swidas, shot Ulysses "Cory" Altizer. Of that there is no doubt. Swidas claimed that he shot Altizer in self-defense. A jury found that he did not. The issue we consider today focuses only on Swidas's location when he fired his weapon. Where he was when he fired the gun makes a significant difference: R.C. 2941.146 states that if he fired the shots "from a motor vehicle," he is subject to a mandatory, five-year prison term. But what does "from a motor vehicle" mean?

The Shooting

{¶ 3}   Swidas and Altizer had a history of physical confrontations before the night in question.  Altizer and Joe Naples were already at Horvath's Pub when Swidas arrived.  Altizer first noticed Swidas that night when Altizer went to use the restroom.  The two exchanged brief unpleasantries (Altizer: "Hey Sweets, how you doin'?" Swidas: "Better than you").  By the time Altizer emerged from the restroom, Swidas had left the bar.  Some time later—Swidas and Altizer differ on how long—Altizer and Naples left, too.

{¶ 4}   Swidas's car, a Buick Park Avenue, was backed into a parking space facing Horvath's.  The spaces were angled.  Swidas testified that he heard Altizer and Naples approaching him when he was opening the driver's door of his car.  He testified that they were charging at him and that he thought they were going to try to attack him and rob him.  He reached for the gun he had under the driver's seat, grabbed it, and started firing.  Swidas testified that when he fired his gun, the open car door was between him and Altizer.  Altizer was in front of and to the right of Swidas's vehicle.  Swidas fired five shots; Altizer was hit once, in the hand, damaging a finger.  After firing, Swidas jumped into his car and drove off.  Witness testimony differed as to whether the car was running at the time of the shooting; at the very least, its lights were on.

{¶ 5}   Altizer corroborated Swidas's testimony about Swidas's position near the car at the time of the shooting.  He described Swidas as being on the driver's side of the car behind the open door—"between the door and the vehicle, like it—say, like it was a shield."  In relation to the door, he described Swidas as being "like in the corner" where the hinges are.  As for Swidas's posture, Altizer testified, "He was over the windshield of the car a little bit, and pointing a gun at me, shooting."

The Trial

{¶ 6}   Swidas's counsel moved to dismiss the specification at issue at the conclusion of the testimony.  He argued that the evidence showed that Swidas was standing outside the vehicle when he fired the shots and that under R.C. 2941.146, the specification was not applicable if Swidas was not inside the car. Alternatively, he argued that if the statute is not interpreted to require the offender to be inside the car, it is unconstitutional because it bears "no rational relationship to any legitimate State purpose."  The court denied the motion to dismiss.

"From a motor vehicle" is an easily determined standard. Anybody knows whether something is "from a motor vehicle[.]" * * * The legislature certainly knows the words.  If they intended the motor vehicle to be in motion, or if they intended the shooter to be occupying the motor vehicle, or in or upon the motor vehicle, the legislature could have written it that way.  * * * So, I believe that since the language is clear and unambiguous, and the facts in this case are that the vehicle was unlocked, the door was open, the weapon was retrieved from inside the vehicle, * * * the defendant stood in the well between the open door and the body of the car. Some testimony is, the vehicle was running. * * * The defendant left in it within a matter of seconds.  So, the Court overrules the defendant's objection to the constitutionality of that statute or its inclusion here under the facts of this case.

{¶ 7}   The case went to a jury.  The trial court's jury instruction regarding the specification was not expansive:

[Y]ou will also separately decide whether, beyond a reasonable doubt, the defendant, as an essential element of the offense, purposely or knowingly caused or attempted to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle.

**{¶ 8}** The prosecution made it clear to the jury in closing argument that Swidas did not have to be in the vehicle for the specification to apply:

And then the second specification addresses the discharging of a firearm from a motor vehicle. And I'm sorry; you can [*sic*] eliminate this language. But it means that he discharged it from a motor vehicle. Not in a motor vehicle or while in a motor vehicle. From.

**{¶ 9}** The jury acquitted Swidas on the charge of attempted murder but convicted him on two counts of felonious assault with two firearm specifications each, including the specification set forth in R.C. 2941.146. The jury also convicted Swidas of tampering with evidence and carrying a concealed weapon. The trial court sentenced appellant to 22 years' imprisonment, which included the mandatory five-year term under R.C. 2941.146.

The Appeal

**{¶ 10}** Swidas appealed his convictions. Two of his propositions of law addressed R.C. 2941.146: Swidas argued to the appellate court that the trial court should have held that R.C. 2941.146 was unconstitutionally vague as applied to him and that the statute violated his constitutional right to equal protection.

**{¶ 11}** The appellate court rejected Swidas's vagueness argument, holding that "[t]he statute is plain on its face—all that is required for the enhancement is

4

that the firearm is discharged 'from a motor vehicle.' The term 'drive-by' does not appear in the statute nor does the statute require the vehicle to be the starting point of the shooting." *State v. Swidas*, 11th Dist. No. 2009-L-104, 2010-Ohio-6436, 2010 WL 5550223, ¶ 21.

**{¶ 12}** And the court held that R.C. 2941.146 covered Swidas's conduct since the statute did not limit its application to persons who are engaged in proscribed activity *inside* a motor vehicle:

> Under the facts of the instant case, it was appropriate to allow the jury to consider whether appellant was subject to the firearm specification of R.C. 2941.146. Here, the evidence introduced at trial reveals that appellant's vehicle was running, the headlights were on to illuminate where the victims were located, the driver's door was open, and appellant was standing within the framed area of the door and the vehicle, leaning on the vehicle as he discharged his weapon.

> If there is evidence that the discharge of the firearm occurred when the defendant was in physical contact with the vehicle and used the vehicle to facilitate the discharge of the firearm, then it is appropriate to instruct the jury on the specification contained in R.C. 2941.146. The statute clearly gives great weight to the mobile nature of the vehicle. If the legislature wanted to limit the application of the specification to circumstances where the defendant was "within" or "while riding in" the motor vehicle, it could have easily done so. The term "from" encompasses a much broader range of activity.

*Id.*, ¶ 26-27. The court also rejected Swidas's equal-protection argument. *Id*., ¶ 33.

**{¶ 13}** The matter is before this court upon the acceptance of a discretionary appeal.

## Law and Analysis

**{¶ 14}** We accepted only one of Swidas's proposed assignments of error: "R.C. 2941.146 is unconstitutionally vague as applied to a defendant who discharges a firearm while standing outside a motor vehicle." However, since we do not need to determine the constitutionality of R.C. 2941.146 to resolve this case, we will not; "when a case can be decided on other than a constitutional basis, we are bound to do so." *State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.*, 71 Ohio St.3d 504, 507, 644 N.E.2d 361 (1994). We hold in this case simply that R.C. 2941.146 is not applicable when a defendant is standing outside his vehicle.

### R.C. 2941.146

**{¶ 15}** R.C. 2941.146 describes a firearm specification that imposes a mandatory five-year prison term on a defendant who commits a felony that includes as an element "purposefully or knowingly causing or attempting to cause * * * physical harm to another," when the crime was committed by firing a weapon from a motor vehicle.

(A) Imposition of a mandatory five-year prison term upon an offender * * * for committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home is precluded unless the indictment, count in the indictment, or information charging the offender

6

specifies that the offender committed the offense by discharging a firearm from a motor vehicle other than a manufactured home.

{¶ 16} The crux of this case is determining what the word "from" means in the phrase "from a motor vehicle." The court of appeals stated that R.C. 2941.146 is not limited to "drive-by" shootings. But does it apply to a "stand-by" shooting?

### Common Usage

{¶ 17} R.C. 1.42 states that for purposes of statutory construction, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."

In accordance with that statutory mandate, we have held repeatedly that "[i]n the absence of a specific statutory definition, words used in a statute must be interpreted in their usual, normal, or customary meaning." *State ex rel. Brenders v. Hall* (1995), 71 Ohio St.3d 632, 634, 646 N.E.2d 822; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150.

*State v. Everette*, 129 Ohio St.3d 317, 2011-Ohio-2856, 951 N.E.2d 1018, ¶ 16.

{¶ 18} The Revised Code defines "motor vehicle" (R.C. 4501.01) and "firearm" (R.C. 2923.11), but it should be no surprise that it does not define "from." Dictionaries do. Webster's Third New International Dictionary 913 (1986) defines "from":

[U]sed as a function word to indicate a starting point: as (1) a point or place where an actual physical movement (as of departure, withdrawal, or dropping) has its beginning * * *.

{¶ 19} The Oxford English Dictionary 210-211 (2d Ed.1989) also defines "from": "Denoting departure or moving away: governing a [substantive] which indicates a point of departure or place whence motion takes place."

{¶ 20} Both definitions refer to a "point" or "place" whence something departs. In the statute, that point or place is "a motor vehicle." That place is not "the vicinity of a motor vehicle" or "near a motor vehicle." The statute requires that the starting point of the activity is the motor vehicle itself.

{¶ 21} But a motor vehicle cannot fire a weapon; the statute applies to people. That does not obviate the statutory requirement that the locus of the discharge of the weapon is the motor vehicle itself. For the locus of the discharge to be the motor vehicle, then, the person discharging the weapon must have a substantial physical connection to the vehicle. If a person were in or on a vehicle to the extent that the vehicle was providing substantial support to the person, the locus of that person's firing of the weapon would be the motor vehicle. Without a substantial physical connection to the vehicle, a shooter cannot be said to have fired a shot that commenced from the motor vehicle.

Swidas's Location

{¶ 22} Our parsing of prepositions continues in determining whether Swidas had a substantial physical connection to the motor vehicle when he shot Altizer; the key to this analysis is the victim's use of the word "over." Altizer testified, "He was over the windshield of the car a little bit, pointing a gun at me, shooting." He did not testify that any part of Swidas was on the vehicle. The appellate court incorrectly stated that Swidas was "leaning on the vehicle as he discharged his weapon." The state cites nothing in the record that supports the

appellate court's statement; no testimony even suggests that Swidas was on the car.

{¶ 23} Indeed, the state does not rely on physical contact to make its case; instead, it basically argues that the vehicle was the instrumentality, the sine qua non, of the crime. That is the same reasoning that the trial court used in denying Swidas's motion to dismiss the R.C. 2941.146 specification. The state argues that the vehicle was "the starting point from which Appellant staged his attack," that it was "the origin from which Appellant retrieved his gun," that it provided "protection and concealment" for Swidas, and that it was the means by which Swidas "was able to make a rapid escape from the crime scene." All those statements are true, all supported by testimony, but none are relevant to R.C. 2941.146. The key to a violation under R.C. 2941.146 is the location of the shooter at the time of the shooting. In this case, there is no evidence suggesting that Swidas had even incidental contact with the vehicle when he fired his weapon. The "from" in this case is a spot next to the motor vehicle.

Rule of Lenity

{¶ 24} To hold, as the state requests, that "from" includes the penumbra of a motor vehicle would first require a holding that the statute is ambiguous, that "from a motor vehicle" includes more than the physical confines of the motor vehicle itself. But R.C. 2901.04(A) states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04 is a codification of the "rule of lenity": "[u]nder the rule, ambiguity in a criminal statute is construed strictly so as to apply the statute only to conduct that is clearly proscribed. *United States v. Lanier* (1997), 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432." *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 38. Strictly construing the statute in favor of the accused limits the reach of the statute to persons shooting a firearm from the vehicle itself, not from nearby. The only

conduct that is clearly proscribed by the statute is discharging a firearm while the person firing the weapon is in or on a motor vehicle.

**{¶ 25}** The state of Washington, in its definition of a drive-by shooting, provides an example of a statute that does clearly proscribe firing weapons from the vicinity of a motor vehicle:

> A person is guilty of drive-by shooting when he or she recklessly discharges a firearm as defined in [Wash.Rev.Code] 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.

Wash.Rev.Code 9A.36.045(1). R.C. 2941.146, on the other hand, simply does not apply when a shooter discharges his weapon "from the immediate area of a motor vehicle."

### Conclusion

**{¶ 26}** Since we conclude that R.C. 2941.146 is not applicable when a defendant fires a weapon while standing with both feet planted on the ground with no substantial physical connection with a motor vehicle, we reverse the decision of the court of appeals, vacate the appellant's sentence on the firearm specification under R.C. 2941.146, and remand the matter to the trial court for resentencing.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Charles E. Coulson, Lake County Prosecuting Attorney, and Patrick J. Condon and Alana A. Rezaee, Assistant Prosecuting Attorneys, for appellee.

Morganstern, MacAdams & DeVito Co., L.P.A., and Michael A. Partlow, for appellant.

_____