**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Pelletier v. Campbell,* **Slip Opinion No. 2018-Ohio-2121.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2121

PELLETIER, APPELLEE, *v*. THE CITY OF CAMPBELL, APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Pelletier v. Campbell,* Slip Opinion No. 2018-Ohio-2121.]

*Torts—Political-subdivision immunity—R.C. 2744.02(B)(3)—Whether a stop sign is "in repair" depends on its physical condition, not whether it no longer serves its purpose due to an extraneous factor—The duty to "remove obstructions from public roads" applies only to obstructions that originate on the public road and does not apply to conditions that are only near or in the vicinity of public roads.*

(No. 2017-0088—Submitted February 14, 2018—Decided June 5, 2018.)

APPEAL from the Court of Appeals for Mahoning County,

No. 15 MA 0220, 2016-Ohio-8097.

_____

**KENNEDY, J.**

{¶ 1} This discretionary appeal from the Seventh District Court of Appeals presents the question whether the Political Subdivision Tort Liability Act, R.C.

Chapter 2744, grants immunity to appellant, the city of Campbell, in a personal-injury action seeking recovery based on the city's failure to remove foliage that was growing 34 feet in front of a stop sign. The appellate court affirmed the trial court's denial of the city's motion for summary judgment on the claims of appellee, Judith Pelletier. It held that there are genuine issues of material fact regarding whether R.C. 2744.02(B)(3), which provides that a political subdivision may be held liable for the negligent failure to keep public roads in repair and the negligent failure to remove obstructions from them, applies as an exception to the city's immunity from suit.

**{¶ 2}** Because the language of R.C. 2744.02(B)(3) is plain and unambiguous, it must be applied, not interpreted. *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. It is not disputed that the stop sign was mandated and therefore part of the public road. However, the stop sign was in repair, and because there was no foliage to remove from the stop sign, the sign was not obstructed.

**{¶ 3}** Accordingly, the city is entitled to judgment as a matter of law, and we reverse the judgment of the court of appeals and remand the matter to the trial court to dismiss the claims against the city.

**Facts and Procedural History**

**{¶ 4}** On August 26, 2013, Pelletier was driving down Sanderson Avenue in Campbell, Ohio, to attend an orientation related to her employment as a high-school nurse, when she came to the intersection with 12th Street. Traffic on Sanderson Avenue is controlled by a stop sign, while traffic on 12th Street has the right-of-way and no stop sign. According to Pelletier, she did not see the stop sign because trees or large bushes in the "devil strip"—what the parties call the grassy area between Sanderson Avenue and the sidewalk—blocked it from her view. Although she saw the intersection, she did not slow down, brake, or look for other vehicles on 12th Street before proceeding through it. As a result of her failure to

2

yield the right-of-way, she collided with another vehicle entering the intersection on 12th Street.

{¶ 5} In March 2014, Pelletier brought this personal-injury action against the city, Danny Saulsberry (the owner of the land on which the foliage grew), the Bank of New York Mellon (which had initiated foreclosure proceedings on Saulsberry's property), and Safeguard Properties, L.L.C. (which had previously contracted to maintain the property for the bank), alleging that their failure to maintain the devil strip to ensure that the stop sign was visible to approaching traffic caused her injuries. The bank and Safeguard filed cross-claims against the city, seeking indemnification and contribution. Pelletier later settled her claims against Safeguard.

{¶ 6} The city moved for summary judgment against Pelletier and the bank, asserting that it is immune from liability pursuant to R.C. Chapter 2744, because the city had no duty to maintain the stop sign, the stop sign was not obstructed, and the city lacked notice of the overgrown foliage. The city supported its motion with the affidavit of Gary Bednarik, the city's park and street superintendent, who averred that the stop sign was 34 feet, two inches from the foliage in the devil strip.

{¶ 7} The trial court denied the city's motion for summary judgment, and the court of appeals affirmed, holding that the city could be liable for negligently failing to keep public roads in repair "[w]here, as here, a mandated traffic control device (which is considered to be, by definition, a public road) no longer serves its purpose because of some extraneous factor," such as foliage blocking it. 2016-Ohio-8097, 75 N.E.3d 779, ¶ 22 (7th Dist.). It also concluded that "[w]hether or not the failure to remove the foliage here was an obstruction which [the city] was obligated to remove presents a question of material fact for the trier of fact to resolve." *Id.* at ¶ 18.

{¶ 8} The city appealed to this court, presenting two propositions of law:

Because an "obstruction" for purposes of determining the immunity of a political subdivision in all claims which allege a negligent failure to maintain a "public road" is confined to a condition which blocks or clogs the roadway, roadside foliage which does not block or clog travel or render a traffic control device indiscernible does not qualify as an obstruction.

"Failure to keep public roads in repair" pursuant to the immunity exception set forth in R.C. 2744.02(B)(3), requires that the actual public road be in a deteriorated, damaged or disassembled state from that existing at construction, placement, or reconstruction.

## Positions of the Parties

{¶ 9} On appeal to this court, the city maintains that the appellate court erred in deciding that a political subdivision can be held liable for failing to keep a stop sign "in repair" based on "extraneous circumstances entirely unrelated to the actual condition" of the sign. It points to our decision in *Heckert v. Patrick* for the proposition that a road is "in proper repair" when it is not deteriorated or disassembled. *See* 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984). The city contends that liability should not be imposed for the failure to trim or remove tree limbs that do not affect the condition of the roadway itself—and here, it maintains, there is no evidence that the stop sign was deteriorated, disassembled, or in any way damaged. It further argues that the foliage was not an "obstruction" as defined by this court in *Howard v. Miami Twp. Fire Div.*, i.e., "an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so," 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 30. Here, the foliage did not completely block the stop sign or make it indiscernible. The city asserts that the General Assembly amended

R.C. 2744.02(B)(3) in 2003 to clarify that political subdivisions are not liable for conditions that merely hinder or impede the use of the public road, and it argues that "[f]oliage or other extraneous conditions—not located on the traveled portion of the roadway—that merely impose a potential visual hindrance, but do not literally render the road sign entirely indiscernible, are not obstructions within the meaning of the statute."

{¶ 10} Pelletier responds that the duty to keep public roads in repair requires a political subdivision "to maintain the proper operation and functioning" of traffic-control signals that fall within the definition of "public road." She maintains that the stop sign on Sanderson Avenue was indiscernible and that therefore it was not functioning as designed and cannot be considered "in repair." For this reason, she contends, the city had a statutory duty to trim or remove limbs that were causing the stop sign to be "rendered wholly ineffective or even significantly ineffective." She argues that this court's decision in *Heckert* is distinguishable, because that case was decided prior to the enactment of R.C. 2744.02(B)(3) and did not concern a mandated traffic-control device on a public road. Pelletier also asserts that when foliage "constitutes an obstruction to visibility of the traffic control device," rendering it "ineffective or useless," the city can be held liable based on the exception to immunity for the negligent failure to remove obstructions from public roads. She asserts that the foliage at issue here not only blocked part of Sanderson Avenue but also completely blocked the stop sign and therefore satisfies the definition of "obstruction" articulated in *Howard*.

{¶ 11} Accordingly, we are asked to decide whether the failure to remove foliage growing in the devil strip 34 feet, two inches from a stop sign constitutes either a failure to keep a public road in repair or a failure to remove an obstruction from a public road.

**Law and Analysis**

*Standard of Review*

{¶ 12} Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment. *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *see also Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 17 (noting the importance of deciding a political subdivision's entitlement to immunity before trial).

{¶ 13} The review of a summary judgment denying political-subdivision immunity is de novo and is governed by the summary-judgment standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. As we explained in *M.H. v. Cuyahoga Falls*,

> Summary judgment may be granted when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

(Brackets sic.) 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

*Statutory Construction*

{¶ 14} This case presents a straightforward question of statutory interpretation. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith*

6

*v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. R.C. 1.42 guides our analysis, providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Further, as we explained in *Symmes Twp. Bd. of Trustees v. Smyth*, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears*, 143 Ohio St. 312, 55 N.E.2d 413, at paragraph five of the syllabus.

*Political-Subdivision Immunity*

{¶ 15} Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis:

"The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

"The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

"If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision

from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability."

(Ellipsis sic.) *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 15, quoting *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7-9.

*Regulation, Maintenance, and Repair of Public Roads*

{¶ 16} Our focus is on the second tier of the analysis, because it is not disputed that regulating, maintaining, and repairing Sanderson Avenue, including its traffic signs, is a governmental function. *See* R.C. 2744.01(C)(2)(e) and (j).

{¶ 17} R.C. 2744.02(B)(3) establishes an exception to political-subdivision immunity: "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." Relevant here, R.C. 2744.01(H) defines "public roads" to mean "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices."

{¶ 18} The parties do not dispute that the Ohio Manual of Uniform Traffic Control Devices required a stop sign on Sanderson Avenue at 12th Street and that the stop sign at issue here is therefore part of the public road.

*Keeping Public Roads "in Repair"*

{¶ 19} Pursuant to R.C. 2744.02(B)(3), the city may be held liable for injuries caused by its negligent failure to keep public roads "in repair." The statute does not define the phrase "in repair," and we construe it according to its common

usage. R.C. 1.42. In this context, the word "repair" means "the state of being in good or sound condition." *Webster's Third New International Dictionary* 1923 (2002). *See also Sanderbeck v. Medina Cty.*, 130 Ohio St.3d 175, 2011-Ohio-4676, 956 N.E.2d 832, ¶ 14 (O'Donnell, J., dissenting) ("The plain meaning of the word 'repair' is 'to put back in good condition after damage [or] decay.' Webster's New World College Dictionary (4th Ed.2000) 1214"). And construing a statute imposing a duty on county commissioners to keep roads and bridges "in proper repair" in *Heckert*, we explained that this language created "a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges." 15 Ohio St.3d at 406, 473 N.E.2d 1204. The court noted that the duty to keep roads in repair did not extend to "matters unrelated to actual roadway conditions," such as tree limbs overhanging a county road. *Id*. at 407.

{¶ 20} Accordingly, whether a stop sign is in repair depends on its physical condition, and nothing in R.C. 2744.02(B)(3) supports the appellate court's holding that a traffic-control device is not in repair when it "no longer serves its purpose" due to "some extraneous factor." 2016-Ohio-8097, 75 N.E.3d 779, at ¶ 22. An extraneous factor is by definition something "outside or beyond" the public road. *Webster's Third New International Dictionary* 807 (2002) (defining "extraneous"). Had the General Assembly intended to impose liability for something extraneous to the public road (such as foliage along it), it could have done so expressly. It did not, and a court may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation. *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29.

{¶ 21} Here, there is no showing that the stop sign was not in good or sound condition or that it was otherwise deteriorated or disassembled. In fact, the only conclusion that may be drawn from the evidence in the record, which includes

photographs of the stop sign from different angles, is that the sign was in repair at the time of the accident.

{¶ 22} Accordingly, the city was entitled to summary judgment on claims that it negligently failed to keep the public road in repair.

*Removing Obstructions from Public Roads*

{¶ 23} The city may also be held liable for injury caused by the "negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3).

{¶ 24} The General Assembly enacted the current version of R.C. 2744.02(B)(3) to supersede decisions from this court construing the prior version of the statute as providing an exception to immunity for conditions that were "not actually on the roadway." *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 27-28. Those decisions, for instance, had interpreted earlier language creating liability for a political subdivision's failure to keep a roadway "free from nuisance" to mean that there was a duty to remedy conditions such as a defective tree limb threatening to fall on a roadway, *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 721 N.E.2d 1020 (2000), or crops growing alongside a road and obstructing the view of approaching traffic, *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.*, 63 Ohio St.3d 318, 587 N.E.2d 819 (1992). We recognized in *Howard* that in revising the statute, the legislature had used language "that focused solely on the roadway itself" and sought "to limit political-subdivision liability for roadway injuries and deaths." *Howard* at ¶ 29. We therefore concluded in *Howard* that the duty "to remove obstructions from public roads" under R.C. 2744.02(B)(3) extends only to "an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 30.

{¶ 25} We adhere to our holding in *Howard* explaining what an obstruction is. But that definition, standing alone, does not resolve the question here: When does a political subdivision have a duty to remove a potential obstruction from a

mandatory traffic-control device that is part of the public road? Accordingly, although the parties focus on the meaning of the term "obstructions" as we construed it in *Howard*, that word must be read in the context of the whole provision creating the duty to remove obstructions *from* public roads. *See* R.C. 1.42; *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19 ("all words [in a statute] should have effect and no part should be disregarded").

{¶ 26} Because the statute does not define the word "from," we construe it according to its common usage. R.C. 1.42. In this context, the word "from" is "used as a function word to indicate the source or original or moving force of something: as * * * (4) the place of origin, source, or derivation of a material or immaterial thing * * * <took a dime [from] his pocket> * * *." *Webster's Third New International Dictionary* 913 (3d Ed.2002). As the United States Court of Appeals for the D.C. Circuit has noted, "one who states that a man 'took a dime [from] his pocket' could only be understood to mean that the dime originated from a specific location on a specific person." *Natl. Assn. of Clean Water Agencies v. Environmental Protection Agency*, 734 F.3d 1115, 1125 (D.C.Cir.2013).

{¶ 27} The duty to "remove obstructions from public roads" therefore indicates that the obstruction must originate in a specific location: the public road. And because the word "from" denotes a specific place, it cannot refer to conditions that are only near or in the vicinity of public roads. *See State v. Swidas*, 133 Ohio St.3d 460, 2012-Ohio-4638, 979 N.E.2d 254, ¶ 20. Rather, a political subdivision has a duty to remove obstructions that are on public roads, and pursuant to the statutory definition of "public roads," that includes only obstructions that are on a roadway, on a bridge, or on a mandated traffic-control device.

{¶ 28} For this reason, although a political subdivision is not immune from liability for the negligent failure to remove an obstruction from a stop sign mandated by the Ohio Manual of Uniform Traffic Control Devices, R.C.

2744.02(B)(3) creates no duty to remove foliage from the devil strip when it is 34 feet, two inches in front of the stop sign and not on the sign itself. Because foliage cannot be removed *from* a stop sign if it is not *on* the stop sign, the exception to immunity provided by R.C. 2744.02(B)(3) does not apply.

{¶ 29} The General Assembly could have imposed a general duty on political subdivisions to maintain the vegetation along public roads, yet it chose not to do so, and it specifically excluded the devil strip from the definition of the term "public road." *See* R.C. 2744.01(H) (excluding berms, shoulders, and rights-of-way from the definition of "public roads"); *Baker v. Wayne Cty.*, 147 Ohio St.3d 51, 2016-Ohio-1566, 60 N.E.3d 1214, ¶ 23 (plurality opinion) ("when Baker's tire traveled off the edge of the pavement, it left the public road and dropped onto the berm or shoulder"). As we recognized in *Howard*, the enactment of the current version of R.C. 2744.02(B)(3) abrogated our holdings that political subdivisions have a duty to maintain vegetation growing above or alongside a roadway that may hinder the view of approaching traffic. *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 27-29, citing, e.g., *Manufacturer's Natl. Bank of Detroit*, 63 Ohio St.3d at 322-323, 587 N.E.2d 819. We may not reinstate that duty by judicial fiat. *Accord Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, ¶ 22 ("The General Assembly chose not to mention attorney fees when it drafted the statute, and we decline to add them").

{¶ 30} The city was therefore entitled to summary judgment on claims alleging that it negligently failed to remove an obstruction from a public road.

**Conclusion**

{¶ 31} The General Assembly, the arbiter of public policy in Ohio, has acted "to limit political-subdivision liability for roadway injuries and deaths," *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 29, with a purpose to preserve " 'the fiscal integrity of political subdivisions,' " *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 23, quoting *Wilson*

*v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 453, 639 N.E.2d 105 (1994). And it did so, in part, by limiting a political subdivision's liability for regulating, maintaining, and repairing public roads to the negligent failure to keep them in repair and to remove obstructions from them.

**{¶ 32}** Rather than second-guess the policy decisions of the legislative branch, "[o]ur role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29. And because R.C. 2744.02(B)(3) is unambiguous, we must simply apply its plain meaning here.

**{¶ 33}** In this case, the stop sign was in repair, because it was in good or sound condition and was not deteriorated or disassembled. And because the foliage was not on the stop sign, the city had no obligation to remove it from the devil strip. No genuine issues of material fact remain, the city is immune from liability, and the trial and appellate courts erred in failing to render judgment in its favor.

**{¶ 34}** Accordingly, we reverse the judgment of the Seventh District Court of Appeals and remand the matter to the trial court for it to dismiss the claims against the city.

Judgment reversed

and cause remanded.

O'DONNELL, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in part and dissents in part, with an opinion joined by HARSHA, J.

WILLIAM H. HARSHA, J., of the Fourth District Court of Appeals, sitting for DEGENARO, J.

_____

**O'CONNOR, C.J., concurring in part and dissenting in part.**

{¶ 35} I agree with the majority that appellee, Judith Pelletier, failed to establish that the stop sign on Sanderson Avenue at 12th Street in Campbell was not in good repair on August 26, 2013, and I concur that appellant, the city of Campbell, was entitled to summary judgment on the claim that it negligently failed to keep the public road in repair. However, I disagree with the majority's interpretation of the exception to immunity that applies when an injury is caused by a political subdivision's "negligent failure to remove obstructions from public roads," R.C. 2744.02(B)(3).

{¶ 36} The General Assembly amended R.C. 2744.02(B)(3) in 2002. Prior to its amendment, the statute created an exception to immunity for political subdivisions for injuries "caused by their failure to keep public roads * * * in repair, and free from nuisance." Am.Sub.S.B. No. 106, 149 Ohio Laws, Part II, 3500, 3508. After its amendment, the statute limits liability to injuries "caused by [a political subdivision's] negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." *Id.* The application of this amended language to a case involving an allegedly obstructed stop sign is a question of first impression for this court.

{¶ 37} In holding that the city is entitled to summary judgment on the question of its liability for negligently failing to remove an obstruction from the public road, the majority focuses almost exclusively on the meaning of the word "from," and barely considers the word "obstruction." The definition of "obstruction" is "something that obstructs or impedes" or "a condition of being clogged or blocked." *Webster's Third New International Dictionary* 1559 (2002). The definition of "obstruct" is "to be or come in the way of." *Id.*

{¶ 38} The majority interprets the statute to require a plaintiff to establish that an obstruction is "on" a traffic-control device in order to create a risk of liability, but there is no question that an object can obstruct or block a traffic-control

device without literally being on it. The majority effectively rewrites the statute by interpreting the word "from" to mean "on" based on a single definition of the word "from" that the majority selects out of multiple offerings in a dictionary.

{¶ 39} Importantly, if the General Assembly had intended the immunity exception to exist only when an obstruction was "on" a public road, it could have used the word "on" instead of "from." It did not.

{¶ 40} The majority analogizes the removing of an obstruction "from" a stop sign to the act of taking a dime "from" a pocket, but deciding the case based on this definition simply does not make sense. Interpreting the statute to require that the obstacle literally touch the traffic-control device nearly eliminates blocked traffic-control devices from the liability exception because of the low likelihood that a traffic-control device will have an obstruction physically on it. But in "enacting a statute, it is presumed that * * * [t]he entire statute is intended to be effective." R.C. 1.47(B). Consequently, we should not adopt a strained reading that unduly limits the statute's effectiveness.

{¶ 41} A simple example highlights the shortcomings of the majority's analysis. Every driver in Ohio is concerned with the practical question whether a stop sign can be seen clearly from the road. From the perspective of a driver, it does not matter whether foliage touching a stop sign renders it unviewable or whether a tree growing two feet in front of it, but not touching it, does. Either way, the sign is impossible to see—thereby creating a dangerous situation. The majority, however, is not concerned with this practical reality faced by drivers across Ohio. It believes there is a difference between obstructing a stop sign with foliage from a tree planted two feet away and not touching it and foliage from a tree planted two feet away and actually touching it—even if under both scenarios, the stop sign is equally obstructed.

{¶ 42} We previously concluded that the General Assembly "used the word 'obstructions' in a deliberate effort to impose a condition more demanding than a

showing of 'nuisance' in order for a plaintiff to establish an exception to immunity." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 29. In *Howard*, we considered whether ice on a roadway was an obstruction. *Id.* at ¶ 15-17. We concluded that "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 30. Because "public roads" includes the traffic-control device at issue in this case, it is appropriate to replace "roadway" as used in *Howard* with "stop sign."[1] The result is that an "obstruction" must be an obstacle that blocks the stop sign and not merely a thing or condition that hinders or impedes the use of the stop sign or that may have the potential to do so.

**{¶ 43}** The majority's narrow interpretation of "from" is also incompatible with the testimony legislators heard prior to voting on the 2002 amendments that added the words "negligent failure to remove obstructions from public roads" to R.C. 2744.02(B)(3). Representative Jay Hottinger assured legislators at the bill's first hearing in the House that "if there is negligence involved, there are consequences and liability and the political subdivision may be sued." Representative Jay Hottinger, Sponsor Testimony, House Local Government and Townships Committee, Meeting Report, *Hannah Capitol Connection* (Jan. 23, 2002). According to Representative Hottinger, under the pre-amendment statute, political subdivisions were liable for "any" failure to remove obstructions from the roadway, and the intent of the amendment was to limit the liability of political subdivisions to "negligent" failures to remove roadway obstructions. *Id.* And Mark

---

[1] In *Howard*, we mistakenly stated that Am.Sub.S.B. No. 106, 149 Ohio Laws, Part II, 3500, "also limited the definition of 'public roads' from a more expansive reading that included 'berms, shoulders, rights-of-way, or traffic control devices' to one that focused solely on the roadway itself," 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 29. In fact, although that legislation limited the definition of "public roads," that definition still includes "traffic control devices" that "are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.01(H).

Landes, an attorney testifying on behalf of the County Commissioner's Association, stated at a Senate committee hearing that the section of the bill pertaining to roadway liability would not change the law substantially but would make it much clearer with the addition of the term "negligence." Mark Landes, Testimony on Behalf of the County Commissioner's Association, Senate State and Local Government and Veterans Affairs Committee, Meeting Report, *Hannah Capitol Connection* (June 6, 2001).

{¶ 44} It is evident, based on this testimony and our own precedent, that the General Assembly's two key motivations in amending the law were to avoid liability for lawsuits brought against political subdivisions for nuisances rather than true obstructions and to provide immunity to political subdivisions that had not been at least negligent in failing to remove obstructions. As evidenced by the General Assembly's decision to continue including certain traffic-control devices in the definition of "public roads," the 2002 amendments did not eliminate liability for a city's negligent failure to remove obstacles obstructing mandatory stop signs, and there is no evidence that legislators intended to add a requirement that the obstacle be touching the public road.

{¶ 45} As we did in *Howard*, this court should focus its inquiry on whether the public road (in this case, the stop sign) is blocked in a way that renders the stop sign wholly unserviceable, not merely more difficult to see. Accordingly, to the extent that an obstacle is actually blocking a traffic-control device from the view of a driver at all distances in which it would be effective, I would hold that a political subdivision may be liable for negligently failing to remove the obstruction, pursuant to R.C. 2744.02(B)(3).

{¶ 46} This court did not accept a proposition of law asserting that the city of Campbell was entitled to immunity under this clarified standard. But contrary to the decisions of the trial and appellate courts below, I would conclude that the trial court, not the jury, is responsible for resolving the immunity question. *See*

*Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992), quoting *Roe v. Hamilton Cty. Dept. of Human Servs.*, 53 Ohio App.3d 120, 126, 560 N.E.2d 238 (1st Dist.1988) (" 'Whether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial' "). That it is necessary to consider the facts in order to determine whether the city negligently failed to remove an obstruction does not transform the immunity question into one that cannot be answered by the court. *See O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972) ("the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact"). Accordingly, I would remand the case to the trial court for further proceedings. I dissent in part.

HARSHA, J., concurs in the foregoing opinion.

_____

Rossi & Rossi and Gregg A. Rossi, for appellee.

Baker, Dublikar, Beck, Wiley & Mathews, Gregory A. Beck, James F. Mathews, and Tonya J. Rogers, for appellant.

Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.

Brosius, Johnson & Griggs, L.L.C., Peter N. Griggs, Donald F. Brosius, and Jennifer L. Huber, urging reversal for amici curiae Ohio Township Association and Coalition of Large Ohio Urban Townships.

Collins, Roche, Utley & Garner, L.L.C., and Kurt D. Anderson, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Isaac, Wiles, Burkholder & Teetor, L.L.C., Mark Landes, Andrew N. Yosowitz, and Shawn K. Judge, urging reversal for amici curiae County Commissioners Association of Ohio, Ohio Municipal League, and County Engineers Association of Ohio.

Joseph Martuccio, Canton Law Director, and Kevin R. L'Hommedieu, Chief Counsel, urging reversal for amicus curiae city of Canton.

Andrea Scassa, Massillon Law Director, urging reversal for amicus curiae city of Massillon.

Jennifer L. Arnold, Alliance Law Director, urging reversal for amicus curiae city of Alliance.

_____