[Cite as *Wintersville v. Bates*, 2026-Ohio-417.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

VILLAGE OF WINTERSVILLE, OHIO

Appellant,

v.

LARRY BATES,

Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0009

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24 CV 269

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jake Michael Linn*, for Appellant and

*Atty. M. Eric Frankovitch*, Frankovitch, Anetakis, Simon, Decapio & Pearl, LLP, for Appellee.

Dated: February 10, 2026

**HANNI, J.**

{¶1}    Appellant, the Village of Wintersville, Ohio (the Village), appeals from a Jefferson County Common Pleas Court judgment reversing, in part, a decision by the Wintersville Village Board of Nuisance Appeals (the Board) on an appeal by Appellee, Larry Bates.  The trial court determined that Bates is not responsible for abating the deteriorating condition of any portion of a retaining wall that is not located on his property and is only responsible for abating the portion of the wall that is actually located on his property.  The Village argues that the trial court merely substituted its judgment for that of the Board and the court abused its discretion in finding the wall was not in Bates' control.  Because the trial court applied the proper standard of review and did not abuse its discretion in finding that Bates is only responsible for that portion of the wall that is actually located on his property, the trial court's decision is affirmed.

{¶2}    Bates is the owner of 333 Fernwood Road in Wintersville.  On February 16, 2024, the Village nuisance officer served Bates with a "Notice to Abate Public Nuisance and Dilapidated Structure located at 333 Fernwood Road" (the Notice).  The Notice was directed at a retaining wall made of railroad ties (the wall) that abuts the side of Bates' house.  Apparently, pieces of the wall were beginning to deteriorate and fall into Parkview Avenue.  It is uncertain when the wall was constructed or who constructed it.  The majority of the wall is not located on Bates' property.  Bates purchased his home in 1990.  At that time, the wall was already in place.

{¶3}    A plat survey of Bates' land and the surrounding area including the wall shows that the wall only traverses onto Bates' property at three small points.  (Plaintiff's Ex. 2).  The majority of the wall runs along property on Parkview Avenue until Parkview Avenue intersects with Fernwood Road.  There was no clear evidence as to who owns that portion of the property on which the wall is located.  It is not within the bounds of Bates' property.  The Village asserts that Bates "occupies" this portion of property even though he does not own it.  The survey indicates that a third property on which a portion of the wall sits is owned by "NOW OR FORMERLY J DAY VOL 236-PG 381 (RESIDUE)."  The survey does not indicate ownership of the portion of the property that encompasses Parkview Avenue.  So, as the survey demonstrates, the wall is situated on the property

of three different owners: (1) Bates; (2) "Now or formerly J. Day"; and (3) an unknown third party.

{¶4} Bates timely appealed the Notice to the Board. Bates appeared before the Board on April 4, 2024. The Board heard testimony from Bates, the officer who issued the Notice, and the Village engineer. It also considered surveys of the area and numerous photographs. By a vote of two to one, the Board determined that the wall constituted a nuisance and that Bates was responsible for abating the entire nuisance. The Board did not make any other findings of fact or conclusions of law. On June 17, 2024, Bates appealed the Board's decision to the trial court.

{¶5} The trial court held a hearing on May 19, 2025, where it heard from counsel for both parties. It also reviewed the transcript of the proceedings before the Board and the briefs on appeal.

{¶6} The court made several findings of fact. It found that the existence of the wall predated Bates' ownership of his property. The court noted it was not established when the wall was constructed or who constructed it. The court further found significant portions of the wall are in disrepair and in a deteriorating condition. The court found the large majority of the wall is not located on Bates' property. And it noted that the vast majority of the wall is on an unknown third party's land.

{¶7} The court then concluded the Board's finding that Bates was responsible for abating the entire nuisance, which is largely not located on Bates' property, was arbitrary and capricious and placed an impossible burden on Bates. The court also noted that the Village did not notify all of the possible landowners upon which the wall sits of a potential nuisance on their property and did not make them parties to this action. Consequently, the court found Bates is not responsible for abating the deteriorating condition of any portion of the wall that is not located on his property. However, it did find Bates is responsible "to the extent that the small portion of the wall located on his property is a nuisance." The court stated that the survey indicating Bates' property boundaries is determinative as to the portion of the wall for which he is responsible.

{¶8} The Village filed a timely notice of appeal on July 3, 2025. It now raises two assignments of error. We will address the assignments of error out of order for ease of discussion.

**{¶9}** The Village's second assignment of error states:

THE TRIAL COURT ERRED IN ITS APPLICATION AND INTERPRETATION OF THE LAW AND ITS DECISION WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE AS A MATTER OF LAW WHEN IT FOUND THE DECISION OF THE BOARD OF NUISANCE APPEAL'S DECISION WAS ARBITRARY AND CAPRICIOUS.

**{¶10}** Here, the Village contends the trial court substituted its judgment for that of the Board when it found Bates was not responsible for abating the nuisance caused by the wall, which is under his control. It asserts the Board based its decision on evidence, which was not contradicted, that Bates controls the entire wall and it lies partially on Bates' property. The Village claims the trial court merely substituted its judgment for that of the Board without explanation.

**{¶11}** R.C. 2506.04 governs appeals from administrative agencies to the common pleas court:

If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

**{¶12}** As to such administrative appeals, in *Scio v. N. Twp. Bd. of Trustees*, 2023-Ohio-2479, ¶ 27-28 (7th Dist.), this Court explained:

This standard of review gives the common pleas court "extensive power to weigh" the evidence. *Henley v. Youngstown Bd. of Zoning Appeals*, 90

Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). Although a trial is not conducted de novo where the proceedings before the board were recorded, in this type of appeal to the trial court from the denial of annexation, "a virtual de novo examination of the record is conducted by the court pursuant to R.C. 2506.04." *In re Petition to Annex 320 Acres to the Village of S. Lebanon*, 64 Ohio St.3d 585, 594, 597 N.E.2d 463 (1992), fn.6.

Thereafter, "[t]he judgment of the [trial] court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." R.C. 2506.04. See also R.C. 2505.01(A)(2) ("Appeal on question as law" is defined as "including the weight and sufficiency of the evidence"). The scope of the appellate court's standard of review is more limited, as the ability to review questions of law does not include the same extensive power to determine the preponderance of the evidence. *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433. The appellate court can review for an abuse of discretion and shall not substitute its judgment for the administrative agency or the trial court merely because it would have decided the case differently. *Id*. at 147-148, 735 N.E.2d 433.

{¶13} With these standards of review in mind, we conclude that the trial court did apply the appropriate standard here.

{¶14} At the hearing before the trial court, the court advised the parties:

Let's get some ground rules before we start then. This is an administrative appeal. So normally, the Court's review - in this case, the trial court level - looks to see if, in fact, all the procedural mechanisms were followed, not so much substituting its own judgment for that of the Village or whomever made the decision.

(Tr. 24). Thus, the court was clear that it would not merely substitute its judgment for that of the Board.

{¶15} And in its judgment entry, the trial court explained that before reaching its decision it reviewed Bates' motion and brief, the Village's brief, the transcript and audio

tape of the proceedings before the Board, and counsel's arguments. (June 4, 2025 JE). The court then made several findings of fact, each of which was fully supported by uncontroverted evidence. After setting out these uncontroverted findings of fact, the court concluded that the Board's decision requiring Bates to "abate a nuisance which is not located on his property was arbitrary and capricious and created an impossible burden" on Bates. (June 4, 2025 JE). Finally, the court concluded that Bates was not responsible for abating the nuisance of the deteriorating condition of the wall for that portion of the wall that is not on his property. It further concluded that Bates was responsible to the extent that the small portion of the wall located on his property is a nuisance. The court stated that the survey indicating the property boundaries was determinative as to the portion of the wall for which Bates is responsible.

{¶16} In this case, the Board did not make any factual findings or indicate what evidence it considered. It simply informed Bates by way of a letter that, after reviewing the evidence, it decided by a vote of two to one that the wall constituted a nuisance and it was affirming the finding of the nuisance officer.

{¶17} As set out above, in its review of the Board's decision, the trial court had "extensive power to weigh" the evidence. *Scio*, 2023-Ohio-2479 at ¶ 27 (7th Dist.), quoting *Henley*, 90 Ohio St.3d at 147. Additionally, R.C. 2506.04 allows a trial court to conduct "a virtual de novo examination of the record". *Id*., quoting *Village of S. Lebanon*, 64 Ohio St.3d at 594, fn.6.

{¶18} The trial court's statements and findings, both at the hearing and in its subsequent judgment entry, demonstrate a thoughtful and thorough review of the Board's decision. The court considered and weighed the evidence and the arguments, as it was permitted to do by statute, in reaching its decision. It properly applied the standard as set out in R.C. 2506.04. It was within the court's statutory authority to find that the Board's decision was arbitrary and capricious.

{¶19} Accordingly, the Village's second assignment of error is without merit and is overruled.

{¶20} The Village's first assignment of error states:

THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION BY FINDING THAT THE AT ISSUE STRUCTURE WAS NOT IN THE CONTROL [OF] THE APPELLEE LARRY BATES.

**{¶21}** The Village argues that the trial court failed to apply Wintersville Ordinance Section 1341.02, which provides: "No owner, tenant or other person or legal entity in charge of or in possession of property shall create, permit or allow a public nuisance to exist upon such property." Wintersville Ordinance Section 1341.02(a).

**{¶22}** A "public nuisance" includes:

(e) A building or structure, or any portion, member, appurtenance or ornamentation thereof, which is likely to fail or become detached, dislodged or to collapse and thereby injure persons or damage property.

(f) A building or structure or any portion thereof that is likely to partially or completely collapse because of dilapidation, deterioration, decay, faulty construction, the removal, movement or instability of any portion of the ground necessary for the purpose of supporting the building, the deterioration, decay, or inadequacy of its foundation, or any other cause.

Wintersville Ordinance Section 1341.01(e)(f).

**{¶23}** The Village notes that, at the hearing, its engineer testified that Bates' house could not exist without the wall. The Village asserts that the entire wall is built from the same material and was likely built at the same time as the house in order to support it. It further claims that no one other than Bates can remedy the situation because the wall is built "into" his house and to alter it will almost certainly affect the structural integrity of the house. The Village points out that Bates did not present any evidence or arguments that the wall is not a public nuisance.

**{¶24}** The Village maintains that the wall is encroaching on a publicly-dedicated right-of-way as evidenced by the surveys introduced at the initial hearing. It claims Bates purchased his house knowing about this obvious defect and he is therefore liable for the wall's trespass.

**{¶25}** The Village also asserts that it does not owe Bates a duty of lateral support. It states it does not own the street, it merely holds a right-of-way over the street. And it

Case No. 25 JE 0009

claims a duty of lateral support does not extend to structures but only to the underlying land.

**{¶26}** Bates, on the other hand, argues the trial court correctly found that the large majority of the wall is not within his control. Bates further argues that the Village exceeded its authority by ordering him to abate a nuisance located on property outside of his ownership and control. Bates points out that according to Wintersville Ordinance Section 1341.03(b), "[t]he notice to abate may be served upon either *the owner, tenant or legal entity in charge of possession of the property*." (Emphasis added). Bates notes the Village has conceded that he is not the owner of most of the property on which the wall sits. And he claims the evidence did not demonstrate that he is a tenant or legal entity in charge of possession of that property. Moreover, Bates urges the record is clear that he neither built nor controlled the wall.

**{¶27}** The Village says that R.C. 2744.02(B)(3) controls this case. It provides:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

. . .

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

The Village claims this statute can be interpreted to say that political subdivisions have no duty to maintain public right-of-ways. As can be seen, R.C. 2744.02 is the political subdivision immunity statute. But this is not an immunity case. So the statute does not apply here.

**{¶28}** The Village also cites to *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 17, where the Ohio Supreme Court stated:

> Relevant here, R.C. 2744.01(H) defines "public roads" to mean "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices."

The Village asserts that when read in conjunction with the above-quoted immunity statute, the Ohio Supreme Court makes clear that the Ohio Legislature intentionally left rights-of-way out of the purview of this statute and, therefore, Bates' contention is meritless. But like R.C. 2744.02 on which the Village relies, *Pelletier's* focus is on political subdivision immunity.

**{¶29}** Thus, the statute and case on which the Village relies in part are not applicable here. This is not a case of political subdivision immunity or a case of maintaining a public right-of-way. Instead, it is a case as to who can and should abate a public nuisance. The Village suggests that, based on the political subdivision immunity statutes, it has no authority to abate a public nuisance on a right-of-way. But "[u]nder common law, the State of Ohio has the authority to abate public nuisances. This authority is extended to Ohio municipalities by the Home Rule provision of the Ohio Constitution." *McClanahan v. City of Cleveland*, 1980 WL 354634, *1 (8th Dist. Apr. 3, 1980), citing *Solly v. Toledo*, 7 Ohio St.2d 16 (1966).

**{¶30}** More importantly, however, whether the Village may or may not be authorized to abate the nuisance here is not at issue in this case. At issue in this case is whether the trial court abused its discretion in finding that Bates cannot be held responsible to abate a nuisance (part of the wall) that is not located on his property. The trial court acted within its discretion.

**{¶31}** As set out above, our standard of review is limited here. We shall not substitute our judgment for the Board or the trial court merely because we would have decided the case differently. *Scio*, 2023-Ohio-2479, at ¶ 28 (7th Dist.), citing *Henley*, 90 Ohio St.3d at 147-148. We can review only for an abuse of discretion. *Id*. Abuse of

discretion implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶32} The trial court based its decision on several undisputed facts: (1) the wall predates Bates' ownership of his property; (2) it is unknown when the wall was built or who built it; (3) significant portions of the wall are in disrepair and in a deteriorating condition; and (4) the majority of the wall is not on Bates' property but on an unknown third-party's property. Each of these facts was established at the hearing before the Board.

{¶33} Three witnesses testified at the hearing before the Board.

{¶34} Bates testified that when he purchased the house in 1990, the wall was already there. (Nuisance hearing transcript). He acknowledged that the wall was now rotting and deteriorating. (Nuisance hearing transcript). Bates stated that he and the Village both had surveys done, which were basically the same. (Nuisance hearing transcript). He testified that in order for him to do anything to the wall he would have to go onto someone else's property because most of the wall was not located on his property, according to the surveys.

{¶35} Eric Hashbarger is the Village nuisance officer. Hashbarger testified that he received a complaint from the Village administrator about the wall's condition. (Nuisance hearing transcript). He then issued Bates a notice to abate the nuisance. Hashbarger acknowledged that he did not know where the property lines were and he could not dispute that the wall is not on Bates' property. (Nuisance hearing transcript).

{¶36} Finally, Village Engineer and registered surveyor John McDevitt testified that a portion of the wall runs down the Village's right-of-way. (Nuisance hearing transcript). He also stated that a portion of the wall is located on Bates' property. (Nuisance hearing transcript). And he agreed that a large portion of the wall is not located on Bates' property. (Nuisance hearing transcript). McDevitt opined that the wall would likely continue to deteriorate and, at some point, parts of the wall were likely to fall into the street. (Nuisance hearing transcript). He also opined that the wall was likely built and "fill" was put in so that the house could be built. (Nuisance hearing transcript). And he agreed that the wall was probably built at the same time as another "wall" on the opposite

side of Bates' garage, as they appeared to be built from the same materials. (Nuisance hearing transcript).

{¶37} After reviewing this evidence and the surveys, we cannot conclude that the trial court abused its discretion in finding Bates is only responsible for abating the portion of the nuisance wall that actually sits on his property. The trial court agreed that the wall is a nuisance. The court did not act unreasonably, arbitrarily, or unconscionably in finding Bates is not responsible for abating a nuisance that is not located on his property.

{¶38} Accordingly, the Village's first assignment of error is without merit and is overruled.

{¶39} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

Dickey, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**