[Cite as *Lovejoy v. Diel*, 2021-Ohio-1124.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| TAMARA J. LOVEJOY, | : | |
| Appellant, | : | CASE NO. CA2020-06-067 |
| | : | O P I N I O N |
| - vs - | | 4/5/2021 |
| | : | |
| TAMMY DIEL, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. 19CVI02127

Joseph R. Matejkovic, 9078 Union Centre Boulevard, Suite 350, West Chester, Ohio 45069, for appellant

Christina N. Harrison, 1735 North Derexa Drive, Hamilton, Ohio 45011, for appellees

**BYRNE, J.**

{¶1} Appellant, Tamara J. Lovejoy, appeals from the decision of the Middletown Municipal Court, Small Claims Division, dismissing her complaint for lack of subject-matter jurisdiction. For the reasons discussed below we reverse.

## I. Factual Background[1]

{¶2}    In 2015, Lovejoy and appellees, Tammy Diel and Dan Diel, entered into an agreement.  The cover page was titled "LAND CONTRACT," but the next page captioned the agreement as an "Agreement to sell [sic] Real Estate."  We will refer to this document as "the Agreement."  The Agreement's full text is as follows, with typographical errors not corrected:

> Agreement to sell Real Estate
>
> This agreement is made on May 29, 2015, between Tamara J. Lovejoy, Seller, of 3206 Morgan Street, City of Middletown 45044, State of Ohio and Dan and Tammy Diel, Buyers, of 3206 Morgan Street, City of Middletown 45044, State of Ohio.
>
> For valuable consideration, the Seller agrees to sell and the Buyers agrees to buy this property for the following price and on the following terms:
>
> 1.  The Seller will sell the property to the Buyers, free from all claims, liabilities, and indebtedness, unless noted in this Agreement.
>
> 2.  The following personal property is also included in this sale: 2 green rocking chairs, 2 front porch swings.
>
> 3.  The Buyers agrees to pay the Seller the sum on $64,632.63, which the Seller agrees to accept as full payment.  The Buyers mortgage payments will be: $740.00 monthly, and due on the 1st of each month.  The Buyers are to arrange a mortgage in their names within 5 years.
>
> 4.  The Buyers also agrees to pay the sum of $740.00 as a deposit
>
> $64,632,63 Purchase Price
> $  -0-  Down Payment
> $64,632,63 Balanced Carried
>
> It is the responsibility of the Buyers to obtain a tenants insurance policy to cover their personal belongings, the dwelling insurance

---

1. We assume for purposes of this opinion that the following facts asserted in the letter attached to Lovejoy's Small Claims Complaint are true.

> is included in the house payment.
>
> It is the Buyers responsibility to maintain the premises inside and out. This property is sold "As Is" condition.
>
> In the event that the Buyer should elect not to purchase the property, it is agreed that the Buyer shall forfeit the monies paid and any credit for work started or completed shall remain the property of the Seller.
>
> THIS AGREEMENT on May 29, 2015 shall be binding upon and insure to the benefit of the respective heirs, representatives, successors and assigns of the parties hereto.

The Agreement included the signatures of the parties and a single notary stamp and notary signature. Though the Agreement listed the Seller as "Tamara J. Lovejoy," it was signed by "Jennifer Lovejoy." The record does not indicate whether "Tamara J. Lovejoy" and "Jennifer Lovejoy" are the same person. Because the parties have not made an issue of this discrepancy, we will assume that they are the same person.

{¶3} The Diels lived in the house located at 3206 Morgan Street, Middletown, Ohio 45044 ("the House") for almost five years. In May 2009, Lovejoy learned that the Diels were moving out. During a walkthrough, Tammy Diel told Lovejoy that the House would be ready for move-in condition and that she would have the carpets cleaned.

{¶4} After the Diels moved out, Lovejoy identified a number of problems with the House, including, but not limited to extensive mold, overgrown vegetation, trash strewn on the lawn, rat nests inside the House, animal droppings and stains in the House, other unidentified stains, missing closet doors, broken steps and a broken fence, holes in siding, piles of junk on the driveway and in the garage, and other general filth, damage, and disrepair. The city of Middletown also issued a citation for violations of the city's grass and weeds ordinance, violations of the garbage, litter, and rubbish ordinance, and violations of the tree/shrubbery ordinance.

{¶5} Lovejoy paid to clean up the House and its yard, as well as to clean up trash,

tires, and miscellaneous items that the Diels had dumped on the adjacent city-owned lot.

{¶6} By the time the Diels moved out of the House, they had paid to Lovejoy monthly payments totaling around $35,500, nearly 55% of the total $64,632.63 purchase price contemplated by the Agreement.

## II. Procedural Background

{¶7} In July 2019, Lovejoy filed a complaint against the Diels in the small claims division of the Middletown Municipal Court. Lovejoy sought $6,000 as compensation for her efforts to clean up the House and the adjacent city-owned lot.

{¶8} The Diels filed a motion to dismiss the complaint. The Diels argued that the Agreement was a land installment contract and because the Diels had paid more than 20% of the purchase price, Section 5313.07 of the Ohio Revised Code required Lovejoy to seek foreclosure and judicial sale in order to recover possession of the property. *See* R.C. 5313.07 ("If the vendee of a land installment contract has paid in accordance with the terms of the contract for a period of five years or more from the date of the first payment or has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property as provided in section 2323.07 of the Revised Code"). The Diels argued that if Lovejoy were required to seek foreclosure, which is an equitable action, the small claims division would lack subject-matter jurisdiction with respect to Lovejoy's complaint. R.C. 1925.02(A)(1) (small claims division has jurisdiction "in civil actions for the recovery of taxes and money only"); *Small v. Stub Hub*, 9th Dist. Summit No. 27997, 2016-Ohio-3438, ¶ 5 (small claims division does not have jurisdiction over claims for equitable relief); *Stidham v. Wallace*, 12th Dist. Madison No. CA2012-10-022, 2013-Ohio-2640, ¶ 9 (foreclosure is an equitable proceeding). Lovejoy filed a memorandum opposing the Diels' motion to dismiss.

- 4 -

{¶9} The magistrate initially denied the motion to dismiss because neither party provided the court with a copy of the Agreement. At a subsequent hearing, the Diels submitted a copy of the Agreement to the trial court. The trial court sua sponte reconsidered its subject-matter jurisdiction and ordered the parties to file memoranda on whether the Agreement constituted a land installment contract. The Diels filed a memorandum renewing the arguments in their motion to dismiss, but they titled this memorandum a "Trial Brief." Lovejoy did not file a memorandum at that time.

{¶10} In January 2020, the magistrate entered a decision determining that the Agreement constituted a land installment contract and that the Diels had paid more than 20% of the total purchase price for the House. Therefore, the magistrate concluded, Lovejoy's only recourse was through a foreclosure proceeding pursuant to R.C. 5313.07. The magistrate dismissed Lovejoy's complaint for lack of subject-matter jurisdiction. Lovejoy filed objections to the magistrate's decision. In April 2020, the trial court overruled Lovejoy's objections, adopted the magistrate's decision, and dismissed the complaint for lack of subject-matter jurisdiction. Lovejoy timely appealed.

### III. Law and Analysis

{¶11} Lovejoy raises the following sole assignment of error:

{¶12} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF/APPELLANT BY DISMISSING HER COMPLAINT.

{¶13} In support of this assignment of error, Lovejoy presents four issues for review. We will address Lovejoy's arguments out of order.

### A. Revival of the Question of Subject-Matter Jurisdiction

{¶14} Lovejoy argues that the trial court erred when it revived the question of subject-matter jurisdiction because the trial court denied the Diels' motion to dismiss, and the Diels did not object to that decision. She also argues that the issue of subject-matter

jurisdiction was improperly raised by way of a "trial brief," which, she contends, is not a proper motion. We disagree.

{¶15} "Subject matter jurisdiction refers to a court's power to hear and decide a case on the merits." *State ex rel. Jones v. Suster*, 84 Ohio St. 3d 70, 75 (1998). "It is well-established that subject matter jurisdiction 'may not be conferred by agreement of the parties or waived, and is the basis for mandatory, sua sponte dismissal either at the trial court or on appeal.'" *In re S.C.R.*, 12th Dist. Clinton No. CA2017-11-018, 2018-Ohio-4063, ¶ 22, quoting *In re B.M.*, 4th Dist. Hocking No. 16CA12, 2017-Ohio-7878, ¶ 8; *see also In re O.V.*, 12th Dist. Butler No. CA2019-03-046, 2019-Ohio-4628, ¶ 6. Once a court determines that it lacks subject-matter jurisdiction it is required to dismiss the complaint. *In re S.C.R.* at ¶ 22. In this case the municipal court was not provided with a copy of the Agreement until after it had denied the Diels' motion to dismiss. We conclude that the trial court did not err in asking the parties at that time to brief the question of whether the Agreement was a land installment contract which, by operation of R.C. 5313.07, could have deprived the trial court of subject-matter jurisdiction.

## B. Appellate Standard of Review

{¶16} On review of a trial court's dismissal for lack of subject-matter jurisdiction, this court must determine whether "'any cause of action cognizable by the forum has been raised in the complaint.'" *McDaniel v. McDaniel*, 12th Dist. Warren No. CA2006-12-142, 2007-Ohio-4220, ¶ 10, quoting *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). Whether a court has subject-matter jurisdiction is a question of law. *Duke Energy Ohio, Inc. v. Hamilton*, 12th Dist. Butler No. CA2018-01-001, 2018-Ohio-2821, ¶ 21, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 34. As a matter of law, this court will conduct a de novo review of the trial court's decision. *In re S.C.R.*, 2018-Ohio-4063 at ¶ 12. This means that the court engages in an independent review without deference to the

trial court's decision. *Geyer v. Clinton Cty. Dept. of Job & Family Servs.*, 12th Dist. Clinton No. CA2020-06-008, 2021-Ohio-411, ¶ 10.

## C. Nature of the Agreement

{¶17}  Lovejoy argues that the Agreement cannot be construed as a land installment contract because it does not comply with the requirements of R.C. 5313.02.  We agree, but we find that the Agreement also fails to meet the definition of land installment contract in R.C. 5313.01.  We will describe these two statutes, then analyze how they apply to the Agreement.

## 1. The Relevant Statutes

{¶18}  Chapter 5313 of the Ohio Revised Code includes a number of provisions describing land installment contracts, the requirements relating to land contracts, and the procedures associated with disputes regarding land installment contracts.  Two sections, in particular, are relevant to the question of whether a contract constitutes a land installment contract: R.C. 5313.01 and R.C. 5313.02. The first of these statutes, R.C. 5313.01(A), defines "land installment contract" as:

> an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation.  Option contracts for the purchase of real property are not land installment contracts.

The second statute, R.C. 5313.02, has four subsections imposing several requirements regarding land installment contracts.  R.C. 5313.02(A) provides:

> Every land installment contract shall be executed in duplicate, and a copy of the contract shall be provided to the vendor and the vendee.  The contract *shall contain at least the following provisions:*

(1)  The full names and then current mailing addresses of all the parties to the contract;

(2)  The date when the contract was signed by each party;

(3)  A legal description of the property conveyed;

(4)  The contract price of the property conveyed;

(5)  Any charges or fees for services that are includable in the contract separate from the contract price;

(6)  The amount of the vendee's down payment;

(7)  The principal balance owed, which is the sum of the items specified in divisions (A)(4) and (5) of this section less the item specified in division (A)(6) of this section;

(8)  The amount and due date of each installment payment;

(9)  The interest rate on the unpaid balance and the method of computing the rate;

(10)  A statement of any encumbrances against the property conveyed;

(11)  A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed;

(12)  A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;

(13)  A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that mortgage and receive credit on the land installment contract;

(14)  A provision that the vendor shall cause a copy of the contract to be recorded;

(15)  A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary;

(16)  A statement of any pending order of any public agency against the property.

(Emphasis added). The "legal description" referenced in R.C. 5313.02(A)(3) is defined as "a description of the property by metes and bounds or lot numbers of a recorded plat including a description of any portion of the property subject to an easement or reservation, if any." R.C. 5313.01(E).

{¶19} R.C. 5313.02(B) imposes certain requirements on mortgages held on property sold by land installment contract. R.C. 5313.02(C) requires that the vendor—that is, the seller—of property sold by land installment contract "shall cause a copy of the contract to be recorded" with the county recorder and a copy of the contract delivered to the county auditor "[w]ithin twenty days after a land installment contract has been signed by both the vendor and the vendee." R.C. 5313.02(D) further requires that "[e]very land installment contract shall conform to the formalities required by law for the execution of deeds and mortgages." It also states that vendors of property sold by land installment contract "shall" have any metes and bounds descriptions of the property reviewed by the county engineer. R.C. 5313.02(D).

{¶20} We now turn to the question of how these statutes apply to the Agreement.

## 2. Application of Statutes to the Agreement

{¶21} In addressing the Diels' argument that the Agreement was a land installment contract, the magistrate—whose decision was adopted by the trial court—analyzed the Agreement solely under R.C. 5313.02. We must examine both R.C. 5313.01(A) and R.C. 5313.02. Contract interpretation is a matter of law and is subject to a de novo review on appeal. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38.

{¶22} R.C. 5313.01(A) defines a land installment contract, in part, as an agreement "under which the vendor agrees to convey title in real property located in this state to the

vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." In the instant case, the Agreement does not satisfy the definition of a "land installment contract" found in R.C. 5313.01(A). Three elements of the definition are missing from the Agreement.

{¶23} First, R.C. 5313.01(A) states that a land installment contract is one under which the vendor agrees to convey title in real property, but this element is lacking because there is no provision in the Agreement stating that Lovejoy, the putative vendor, would convey title.

{¶24} Second, R.C. 5313.01(A) states that a land installment contract concerns "real property located in this state," but this element is lacking because the Agreement does not identify the property at issue. The Agreement simply lists 3206 Morgan Street, Middletown, OH 45044 as the home address of both Lovejoy and the Diels in its introductory paragraph. In the next paragraph, the Agreement states that "[Lovejoy] agrees to sell and the [Diels] agrees [sic] to buy this property * * *." But nowhere does the Agreement state what, exactly, "this property" is. The Agreement never once explicitly identifies 3206 Morgan Street—or any other property, whether by metes and bounds or not—as the property to be conveyed by the Agreement.

{¶25} Third, R.C. 5313.01(A) states that a land installment contract is one in which the "vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation," but this element is also missing. The Diels did not agree to pay the full "purchase price"—that is, $64,632.63. Rather than imposing an obligation to pay, the Agreement explicitly gave the Diels the option to "elect not to purchase the property," in which case the Diels "shall forfeit the monies paid and any credit for work started or completed shall remain the property of

[Lovejoy]."[2]  Because the Agreement did not expressly require the Diels to purchase the property, and they had the option to walk away, the Agreement seems to be more like an option contract than a land installment contract.  *See McGlothin v. Stout,* 12th Dist. Butler No. CA89-03-050, 1989 Ohio App. LEXIS 3126, *6-7 (Aug. 14, 1989).  Significantly, R.C. 5313.01(A) provides that "[o]ption contracts for the purchase of real property are not land installment contracts."

{¶26}  For all three of these reasons, we determine that the Agreement does not satisfy the definition of land installment contract under R.C. 5313.01(A) and is not, in fact, a land installment contract.

{¶27}  The same is true with regard to R.C. 5313.02(A), to which we now turn.  The parties agree that the Agreement does not contain all of the elements of a land installment contract set forth in R.C. 5313.02(A).  The Diels argued at the trial court level that the Agreement "actually complies with a majority of the requirements set forth in R.C. 5313.02," but this does not appear to be correct.  The Agreement contains the full names and then-current mailing addresses of the parties, *see* R.C. 5313.02(A)(1); the date when the contract was signed by each party, *see* R.C. 5313.02(A)(2); the contract price of the property conveyed, *see* R.C. 5313.02(A)(4); the amount of the down payment, *see* R.C. 5313.02(A)(6); the principal balance owed, *see* R.C. 5313.02(A)(7); and the amount and due date of each installment payment, *see* R.C. 5313.02(A)(8).  Altogether, the Agreement contains only six of the 16 elements that R.C. 5313.02(A) says a land installment contract "shall * * * at least" contain.

{¶28}  On the other hand, the Agreement does *not* contain a legal description of the

---

2.  As far as can be determined from the record, this is what the Diels chose to do.  They informed Lovejoy that they were leaving the property and they have not made any claim for recovery of any amount paid to Lovejoy under the Agreement.

property conveyed, *see* R.C. 5313.02(A)(3); a statement requiring the vendor to deliver a general warranty deed, *see* R.C. 5313.02(A)(11); a provision that the vendor provide evidence of title, s*ee* R.C. 5313.02(A)(12); a provision that the vendee can pay on any mortgage on the property on which the vendor defaults, *see* R.C. 5313.02(A)(13); a provision that the vendor shall cause a copy of the contract to be recorded, *see* R.C. 5313.02(A)(14); or a provision regarding which party is responsible for the payment of taxes, assessments, and other charges against the property, *see* R.C. 5313.02(A)(15). Therefore, six of the 16 elements that R.C. 5313.02(A) says "shall" be included in a land installment contract are missing from the Agreement. As previously discussed, R.C. 5313.01(E) defines a "legal description" as "a description of the property by metes and bounds or lot numbers of a recorded plan, including a description of any portion of the property subject to an easement or reservation, if any." The Agreement not only failed to use metes and bounds or lot numbers of a recorded plat to identify the property, but it also failed to even generally identify the property at issue.

{¶29} This leaves three of R.C. 5313.02(A)'s 16 requirements: "any charges or fees for services that are includable in the contract separate from the contract price," *see* R.C. 5313.02(A)(5); "a statement of any encumbrances against the property conveyed," *see* R.C. 5313.02(A)(10); and "a statement of any pending order of any public agency against the property," *see* R.C. 5313.02(A)(16). The word "any" as used in these three provisions suggests that the elements referenced may or may not exist. The record does not indicate why these three items were excluded from the Agreement.

{¶30} The trial court concluded that the Agreement was a land installment contract despite lacking the mandatory elements provided in R.C. 5313.02(A). On appeal, the parties disagree whether all 16 elements of R.C. 5313.02(A) must be included to produce a valid land installment contract.

{¶31} To resolve this issue, we must examine the words of the statute. A court's "duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 14, citing *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, ¶ 18. "In construing a statute, we do not ask 'what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *Lingle v. State*, Slip Opinion No. 2020-Ohio-6788, ¶ 14, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, ¶ 15.

{¶32} "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. "To interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly." *Id.* at 316.

{¶33} R.C. 5313.01(A) sets forth the definition of a land installment contract in clear and unambiguous terms. R.C. 5313.02(A) provides that land installment contracts "shall" contain "at least" the 16 elements set forth in that statute. It is self-evident that "'[s]hall' means must." *Wilson v. Lawrence,* 150 Ohio St.3d 368, 2017-Ohio-1410, ¶ 13. The Ohio Supreme Court "repeatedly ha[s] recognized that use of the term 'shall' in a statute connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *Id.* at ¶ 13. We are unaware of any language in R.C. 5313.02 or anywhere

else in R.C. Chapter 5313 that indicates that the General Assembly intended "shall" to mean anything other than "must." *See e.g., id.*, at ¶ 13 (no indication in statutory scheme of R.C. 2117.06 that General Assembly intended any other meaning than "must"). Moreover, the use of the phrase "at least" in R.C. 5313.02(A) emphasizes that *all* of the 16 elements must be met in order for an agreement to constitute a land installment contract under R.C. Chapter 5313.

{¶34} It is the duty of a court to give effect to the words used; not to delete or insert new words. *Cleveland Elec. Illum. Co. v. City of Cleveland*, 37 Ohio St.3d 50, 53 (1988). The General Assembly has explicitly required that the 16 elements set forth in R.C. 5313.02(A) must be included, at a minimum, for the agreement to constitute a land installment contract. We hold that the Agreement was not a land installment contract under R.C. Chapter 5313 because it only included six of the 16 elements required by R.C. 5313.02(A), and because it does not meet the definition of a land installment contract in R.C. 5313.01(A).[3] R.C. 5313.07, therefore, does not apply, and the trial court does not lack subject-matter jurisdiction. Our holding does not mean that the Agreement is not a contract—rather, we merely hold that it is not a land installment contract as defined by R.C. Chapter 5313.

{¶35} In the magistrate's decision adopted by the trial court, the magistrate cited only one Twelfth District case, *Young v. Hodapp*, 12th Dist. Butler No. CA85-08-094, 1986 Ohio App. LEXIS 9534 (Dec. 29, 1986), in support of his conclusion that the Agreement was a land installment contract despite the omission of multiple R.C. 5313.02(A) elements. The Diels rely on two cases from other districts to make the same argument, *Real Flo*

---

3. R.C. 5313.02(A)'s plain language indicates that the elements described in R.C. 5313.02(A)(5), (10), and (16) only apply if relevant as each subsection uses the word "any." Even if we assume that the elements listed in these subsections were properly omitted from the Agreement because they are not relevant, the Agreement will still lack at least six of the 16 required elements, and our holding would remain the same.

*Properties v. Kelly*, 6th Dist. Lucas No. L-99-1099, 1999 Ohio App. LEXIS 6030 (Dec. 17, 1999), and *Shimko v. Marks,* 91 Ohio App.3d 458 (5th Dist.1993), one of which was also cited by the magistrate. We will address these cases.

{¶36} *Young* was our earliest case addressing the question of whether an agreement constituted a land installment contract under R.C. Chapter 5313. In *Young*, we stated that "R.C. 5313.02 contains the necessary provisions for creating a land installment contract." *Id.* at *5. We determined that the contract in that case did not satisfy the minimum requirements in R.C. 5313.02 because it was neither executed nor properly recorded. *Id.* at *5. That agreement also did not meet all 16 requirements of R.C. 5313.02(A) because it contained only "a fairly detailed description of the property," not a legal description by metes and bounds or lot number. *Id.* at *6. We concluded—relying on a law review article, not the text of the statute—that R.C. Chapter 5313 was a consumer protection law, and therefore "[w]hile the disputed contract fails to meet the specific minimum requirements of the statute, this failure does not by itself make the contract void and unenforceable."[4] *Id.* at *7. We explained that when the requirements of R.C. 5313.02 were not satisfied, "the appropriate inquiry to establish whether the land installment contract was valid is to determine if all the essential elements of a contract were present." *Id.* at *7. We determined that the essential elements of a contract were met, and on that basis "the land installment contract was valid as between the parties." *Id.* at *8. Notably, while we continued to describe the agreement with the phrase "land installment contract," we did not explicitly state that, despite the deficiencies described above, the agreement was a land installment contract *under R.C. Chapter 5313*. Instead, we simply held that the agreement was an

---

4. Notably, the law review article upon which we relied does not state that an agreement may be a land installment contract even when the elements that R.C. 5313.02(A) says "shall" be included are missing. On the contrary, the article describes R.C. 5313.02(A) as "* * * setting forth the required contents of land contracts." James Geoffrey Durham, *Forfeiture of Residential Land Contracts in Ohio: The Need for Further Reform of a Reform Statute*, 16 Akron L. Rev. 397, 425 (1983).

enforceable *contract.* *Id.* at *8. We did not analyze the agreement under R.C. 5313.01 at all. *See id., passim.*

{¶37} A few years after *Young,* we issued our opinion in *McGlothin v. Stout,* 12th Dist. Butler No. CA89-03-050, 1989 Ohio App. LEXIS 3126 (Aug. 14, 1989). In *McGlothin,* we reviewed whether a rental agreement and a contract for purchase that were signed together created a land installment contract. *Id.* at *6. We listed many of the 16 elements in R.C. 5313.02(A) and explained that the statute "requires the land installment contract to contain" those items. *Id.* at *6. Because the "purchase contract in question contained only the barest instruction regarding down payment and future financing" we found that the contract "cannot be interpreted as a land installment contract" and was "more like an option contract." *Id.* at *6. We stated that, "[w]hatever the contractual relationship the parties intended to create by signing these documents, they failed to create a land installment contract as it is statutorily defined." *Id* at *6. At no point in *McGlothin* did we state that an agreement may constitute a valid land installment contract even if it fails to meet all of the requirements of R.C. 5313.02. Moreover, we did not cite or analyze the contract under R.C. 5313.01.

{¶38} Fourteen years later in *Hubbard v. Dillingham*, 12th Dist. Butler No. CA2002-02-045, 2003-Ohio-1443, we decided whether an agreement was a land installment contract solely by analyzing whether the agreement met the definition of a land installment contract in R.C. 5313.01(A). We noted that the agreement was titled "Lease with Option to Purchase;" that the agreement "did not contain any language suggesting that appellant would gain ownership of the property upon the end of the lease;" that the putative vendor did not agree to "convey title" in the property; and that the putative vendee did not "agree to pay the entire purchase price in installment payments." *Hubbard* at ¶ 14. We specifically noted that, "[r]ather, [the putative vendee] had the option to purchase the property under

the terms of the agreement, and was not compelled in any way to purchase the property." *Id.* at ¶ 14. We also noted that while the putative vendee's payments were credited to the sale price, that credit would only take effect if she opted to purchase the property, which she did not do. *Id.* at ¶ 15. We concluded that instead of creating a land installment contract, the agreement instead created a lease with an option to purchase. *Id.* at ¶ 15. We did not cite or refer to R.C. 5313.02 at all.

{¶39} A cursory review could leave the impression that these three cases are inconsistent with one another. However, *Young, McGlothin*, and *Hubbard* can and should be read as consistent with one another and with our opinion today. *Young* and *McGlothin* both explained that the 16 elements listed in R.C. 5313.02(A) are required, as we conclude today. *Young* did not explicitly hold that an agreement could be a land installment contract where it failed to meet all of R.C. 5313.02(A)'s 16 elements. Instead, *Young* held that an agreement that did not meet all 16 requirements was still a valid *contract*—not necessarily a land installment contract—because it still met the requirements for a valid contract. *Id.*, 1986 Ohio App. LEXIS 9534 at *8. This is consistent with our opinion today. The Agreement is not a land installment contract pursuant to R.C. Chapter 5313, but it may be a valid contract. And while *Young* and *McGlothin* relied solely on R.C. 5313.02(A) and ignored R.C. 5313.01(A), and *Hubbard* relied solely on R.C. 5313.01(A) and ignored 5313.02(A), none of the three opinions held that *only* R.C. 5313.02(A) or R.C. 5313.01(A) should be considered when determining if an agreement is a land installment contract. Finally, the Agreement omits some of the same terms that were crucial to our determination in *Hubbard* that the agreement at issue was not a land installment contract. *Id.*, 2003-Ohio-1443 at ¶ 14 (finding R.C. 5313.01[A] definition not met when agreement lacked reference to conveying title and purchaser was not obligated to purchase the property).

{¶40} We are aware that the Fourth, Fifth, Sixth, and Tenth Districts have held that

an agreement can be a land installment contract under R.C. 5313.02 even if the agreement fails to include the 16 mandatory elements set forth in R.C. 5313.02(A). These courts have determined that "substantial compliance" is sufficient—meaning compliance with some, but not all, of the 16 elements. *See Elkins v. Colburn*, 4th Dist. Pike No. 18CA893, 2019-Ohio-2681, ¶ 36; *Shimko,* 91 Ohio App.3d at 462; *Real-Flo Properties,* 1999 Ohio App. LEXIS 6030 at *6; *Merivale Invests. v. Tuggle*, 6th Dist. Lucas No. L-08-1439, 2009-Ohio-6502, ¶ 27; *Gollihue v. Russo*, 152 Ohio App.3d 710, 2003-Ohio-2663, ¶ 34 (10th Dist.). We view these courts' "substantial compliance" approach as inconsistent with the plain language of R.C. 5313.02(A).[5] Our approach described above is both consistent with the relevant statutes and with our own precedents in *Young*, *McGlothin*, and *Hubbard*. The Diels have offered no persuasive basis for abandoning this approach and ignoring the plain language of the statute.

{¶41} Nevertheless, the outcome of this case would not change even if we followed the "substantial compliance" approach. In *Shrock v. Spognardi*, 5th Dist. Richland No. 15CA33, 2015-Ohio-4555, the Fifth District analyzed a residential lease agreement and a purchase real estate agreement that were signed on the same day. The Fifth District noted that, collectively, these "documents failed to include the majority of the R.C. 5313.02(A) statutory requirements, including, but not limited to, a legal description of the property to be conveyed, the amount and due date of each installment payment; and the interest rate on the unpaid balance and the method of computing the rate." *Id.* at ¶ 21. The Fifth District also noted that there was "no evidence the parties recorded the documents." *Id.* at ¶ 21. The Fifth District concluded that there was no land installment contract because "neither

___

5. We are also aware of the policy reasons why some courts have preferred the "substantial compliance" approach. But if that approach is preferable to our approach from a policy perspective, it is for the General Assembly to amend R.C. 5313.02, not for us to ignore its plain language. *See, e.g., Erickson v. Morrison*, Slip Opinion No. 2021-Ohio-746, ¶ 34.

- 18 -

document, individually or collectively, satisfies the requirements of a land installment contract as set forth in R.C. 5313.02." *Id.* at ¶ 21. Though the Fifth District did not specifically refer to its "substantial compliance" approach by name, it seems to have applied that concept when it noted that the documents did not include "a majority of the statutory requirements." *Id.* at ¶ 21. *Shrock* is highly relevant here because the text of the *Shrock* purchase agreement was very similar—and in places identical—to the text of the Agreement at issue in this case. *Id.* at ¶ 4. The Agreement in this case lacks most of the same elements that the Fifth District specifically noted were missing from the *Shrock* agreement, plus other R.C. 5313.02(A) elements. Therefore, even if we applied the "substantial compliance" approach, our determination that the Agreement is not a land installment contract pursuant to R.C. Chapter 5313 would remain the same.

### 3. Lovejoy's Remaining Arguments

{¶42} Lovejoy raises two other issues for review in her brief. She argues that the trial court erred as a matter of law because its dismissal of her complaint constituted a declaratory judgment, and declaratory judgments may not be issued by small claims divisions of municipal courts. Lovejoy also argues that a foreclosure proceeding is not required where a vendee in the land installment contract breaches the contract and surrenders possession of the property. Because we have determined that the Agreement is not a land installment contract and the trial court erred when it dismissed Lovejoy's complaint for lack of subject-matter jurisdiction, both of Lovejoy's remaining two arguments are moot and need not be addressed at this time.

### IV. Conclusion

{¶43} Given our determination that the Agreement was not a land installment contract under R.C. Chapter 5313, Lovejoy was not required to pursue foreclosure under R.C. 5313.07 and the trial court erred in dismissing the complaint for a lack of subject-matter

jurisdiction.[6]  Tamara J. Lovejoy's sole assignment of error is sustained.

{¶44}  Our decision does not address the merits of Lovejoy's claim against the Diels. Whether there is a lawful basis for Lovejoy to recover, whether the facts support Lovejoy's claim, and how much Lovejoy may be able to recover, if at all, remain to be determined by the trial court.

{¶45}  Judgment reversed and remanded for further proceedings consistent with this opinion.

M. POWELL, P.J., and HENDRICKSON, J., concur.

---

6.  Based on our conclusions regarding R.C. 5313.01(A) and R.C. 5313.02(A), we need not examine additional deficiencies related to R.C. 5313.02(C) and (D).