[Cite as *Findlay v. Martens*, 2022-Ohio-4146.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

CITY OF FINDLAY, ET AL.,

    PLAINTIFFS-APPELLEES,          CASE NO.  5-22-05

    v.

GEORGE V. MARTENS,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No.  2018-CV-0446

**Judgment Affirmed**

**Date of Decision:   November 21, 2022**

APPEARANCES:

    *G Q Buck Vaile* **for Appellant**

    *William V. Beach and Kayla L. Henderson* **for Appellees**

**Per Curiam**

{¶1} Defendant-counterclaim plaintiff-appellant, George Martens ("Martens"), brings this appeal from the March 15, 2022, judgment of the Hancock County Common Pleas Court granting the summary judgment motions of plaintiff-counterclaim defendant-appellee, City of Findlay ("Findlay"), and counterclaim defendants-appellees, Andrew Thomas, Tonya Stillberger, Lydia Mihalik, Todd Richard, Erik Adkins, and Jodi Mathias (the "Findlay parties"). Martens also appeals the trial court's denial of his own motion for summary judgment.

*Background*

{¶2} On September 17, 2018, Findlay filed a complaint in the small claims division of the Findlay Municipal Court alleging that Martens failed to pay city taxes for 2013, 2014, and 2015. Martens owned properties in the area and the city believed that Martens owed taxes on his rental income. Martens had not filed his tax returns with Findlay for the years of 2013, 2014, and 2015, so Findlay employees "estimated" his income and alleged in the complaint that Martens owed $3,588.75 plus interest.[1]

{¶3} In response to Findlay's complaint, Martens, proceeding *pro se*, filed an answer along with numerous counterclaims against Findlay and multiple other

---

[1] Throughout the pendency of this case Martens has argued that Findlay's "estimates" were not based on any factual information and thus were complete fabrications rather than estimations. Based on this, Martens maintains that Findlay, and the Findlay parties, did not make any "estimations" but rather engaged in fraudulent speculation.

Findlay parties such as city officials, city employees, and city departments.[2] Martens alleged, *inter alia*, that Findlay and its employees had been harassing him through the filing of multiple "unsupported" criminal complaints against him (such as nuisance actions), through unfairly enforcing zoning laws against him, and through unlawfully confiscating his property. Martens filed counterclaims for, *inter alia*, Abuse of Process, Trespass, "Reckless and Willful Conduct," Malicious Prosecution, and Fraud. Martens sought damages exceeding the monetary jurisdictional limit of the Findlay Municipal Court, so the case was transferred to the Hancock County Common Pleas Court.

{¶4} Findlay and the Findlay parties filed a Civ.R. 12(B)(6) motion to dismiss Martens' counterclaims alleging that they were "insufficient, improper, and * * * otherwise not meritorious[.]"[3] (Doc. No. 41). Martens responded to the motion and on May 16, 2019, the trial court filed a lengthy decision and order analyzing the motion to dismiss. Ultimately the trial court granted Findlay's motion to dismiss with respect to eleven of Martens' counterclaims, some of which the trial court indicated were not recognized as claims for relief such as Martens' claims for "Reckless, Willful, or Wanton Conduct," "Reckless Disregard," "Fraud on the

---

[2] Martens' answer and counterclaim were promptly amended and have since been amended again. Altogether, Martens' answers and counterclaims span hundreds of pages and as such are summarized herein, particularly focusing on issues that are relevant to this appeal.

[3] Because many of Findlay's and the Findlay parties' filings were contained in one document, we will hereinafter refer to their filings simply as Findlay's for the sake of simplicity.

Court," "Unclean Hands," and "Unlawful Charging of a Criminal Act." (Doc. No. 49). Three of Martens' counterclaims survived dismissal: Abuse of Process, Civil Conspiracy, and Replevin/Trespass/Conversion. In addition, Martens' Fraud claim was not dismissed; however, the trial court ordered Martens to plead his Fraud allegation with greater particularity in compliance with Civ.R. 9(B).

{¶5} After the dismissal of the majority of his counterclaims, Martens filed a *voluminous* second amended answer and counterclaim adding over twenty new claims against Findlay and the Findlay parties, many of which were federal 42 U.S.C. 1983 claims.[4] As relevant to this appeal, Martens also alleged that Findlay had failed to comply with various provisions of Ohio Revised Code Chapter 718 and Findlay Ordinances 193-194 when attempting to collect taxes from him.[5]

{¶6} Following Findlay's responsive pleading to Martens' amended counterclaim, the parties filed cross-motions for judgment on the pleadings pursuant to Civ.R. 12(C). The trial court held an oral argument on the motions, then, on January 27, 2020, the trial court filed a thorough decision and order denying Martens' motion for judgment on the pleadings. Findlay's motion for judgment on the pleadings was also denied as to Martens' counterclaims for Abuse of Process,

---

[4] The trial court granted Martens leave to file his second amended counterclaim with some restrictions. For example, Martens was not permitted to recast allegations that had already been dismissed by the trial court.
[5] Notably, Findlay Ordinance 194.02 indicates that it was not effective until January 1, 2016 and that the changes that were codified in R.C. Chapter 718 were to apply to taxable years beginning 2016. Findlay had filed against Martens for tax years in 2013, 2014, and 2015.

Civil Conspiracy, and Trespass; however, Findlay's motion was granted with regard to the Fraud allegations and the new federal claims that had been made by Martin in his second amended counterclaim. In addition, all claims against certain Findlay employees were dismissed.

{¶7} The trial court then issued a date for the completion of discovery and a separate date for filing summary judgment motions, if appropriate. The case proceeded through discovery with over a dozen depositions being taken. Martens also served *numerous* requests for admissions on various individuals such that the trial court had to limit the number to fifty per individual after a request by Findlay.

{¶8} Over two years after Findlay filed its complaint, Martens retained counsel and he requested that the trial court convert his counterclaim into a class action. The request to convert the matter was denied by the trial court given how late in the litigation it had been made.

{¶9} Following discovery, Findlay and Martens filed motions for summary judgment and responses. On March 7, 2022, the trial court filed a decision on the reciprocal summary judgment motions. Findlay's summary judgment motion on Martens' surviving counterclaims was granted with the trial court finding that multiple claims were barred by the statute of limitations, and, in any event, that Findlay and its employees were entitled to sovereign immunity. Martens' motion for summary judgment against Findlay's tax complaint was denied. A judgment

entry memorializing the trial court's rulings with respect to summary judgment was filed on March 15, 2022.

{¶10} The trial court set the matter for a trial on Findlay's income tax complaint scheduled to commence on April 18, 2022. However, prior to proceeding to trial, Findlay filed a notice of voluntary dismissal of its tax complaint against Martens, leaving no claims pending before the trial court.

{¶11} Subsequently, Martens filed a motion to strike Findlay's voluntary dismissal. Separately, Martens filed an appeal to this Court, challenging the trial court's rulings with regard to summary judgment and dismissal of his claims. Martens now asserts the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in failing to grant appellant's motion for summary judgment against counterclaim defendants * * * absent any findings.**

**Assignment of Error No. 2**
**The trial court erred in granting appellees' motion for summary judgment, based on ruling that the appellees' employees of the Income Tax Department were protected by immunity.**

**Assignment of Error No. 3**
**The trial court erred when it dismissed appellant's claim of fraud.**

**Assignment of Error No. 4**
**The trial court erred when it improperly dismissed the defendant/appellant's claim of malicious prosecution under Civil Rule 12(B)(6) in its ruling on 16 May 2019, when the allegations for it existed.**

**Assignment of Error No. 5**
**The trial court erred when it improperly ruled against the appellant in refusing to allow Martens' response to the tax claim of the city of Findlay to be converted to a class action as requested in his motion to allow for a third amended counterclaim on 10 December 2020 and his subsequent motion for class action certification filed on 18 January 2022.**

**Assignment of Error No. 6**
**The trial court erred in failing to rule on and find in appellant's favor on the application of the conditions in ORC 718.37 which were pled by the appellant in the trial court.**

**Assignment of Error No. 7**
**The trial court erred in dismissing Martens 42 1983 claims found in Counts IX, XI, XIII, XIV, XV, XVI, XVII, and XXVI of his second amended complaint.**

**Assignment of Error No. 8**
**The trial court erred in dismissing Martens claims based on appellees' qualified immunity.**

**Assignment of Error No. 9**
**The trial court erred by not rejecting appellees' voluntary dismissal of their tax claim against appellant.**

**Assignment of Error No. 10**
**The trial court erred by not denying appellees immunity in accordance with ORC 2744.09(E).**

{¶12} For ease of discussion, we elect to discuss some of the assignments of error together, and we elect to address the assignments of error out of the order in which they were raised.

*Ninth Assignment of Error*

**{¶13}** In Martens' ninth assignment of error, he argues that the trial court erred "by not rejecting [Findlay's] voluntary dismissal."

Civil Rule 41

**{¶14}** Civil Rule 41 governs voluntary dismissal, and it reads as follows:

**(A)  Voluntary Dismissal: Effect Thereof.**

**(1)  *By Plaintiff; By Stipulation.* Subject to the provisions of Civ. R. 23(E), Civ. R. 23.1, and Civ. R. 66, a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the following:**

> **(a)   filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;**

> **(b)   filing a stipulation of dismissal signed by all parties who have appeared in the action.**

**Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court.**

Analysis

**{¶15}** After the summary judgment proceedings, but prior to the commencement of trial, Findlay filed a Civ.R. 41 voluntary dismissal of its tax claim against Martens. Importantly, a voluntary dismissal is effective when the notice is filed, without order of the court, so long as it is done before trial. *City of Kent v.*

*CDC-Kent, LLC*, 11th Dist. Portage No. 2017-P-0081, 2018-Ohio-3743, ¶ 28, fn. 3. In other words, a "Civ.R. 41(A)(1)(a) dismissal is self-executing[.]" *Shue v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 16AP-432, 2017-Ohio-443, ¶ 9. Therefore, "[a] 'notice' of dismissal is not a motion upon which the trial court *must* rule, nor does anything remain upon which the trial court *can* rule." (Emphasis sic.) *Kent* at fn. 3, citing *Andrews v. Sajar Plastics, Inc.*, 98 Ohio App.3d 61, 65-66 (11th Dist.1994).

{¶16} Here, Findlay had an "absolute right" to voluntarily dismiss its action under Civ.R. 41(A)(1), and it was effective upon filing, "unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant." Civ.R. 41(A)(1)(a). Martens argues that his counterclaims were intricately intertwined with Findlay's tax complaint, particularly his claim for Abuse of Process, thus Findlay could not voluntarily dismiss its complaint.

{¶17} Contrary to Martens' argument, at the time Findlay dismissed its complaint, *all* of Martens' counterclaims had already been dismissed by the trial court, thus *no counterclaims remained pending* to prevent Findlay's voluntary dismissal. Under the plain language of Civ.R. 41, Findlay maintained its absolute right to dismiss the action prior to trial.

{¶18} Notwithstanding this point, even assuming that Martens' counterclaims were still pending at the time of Findlay's voluntary dismissal, Martens does not establish how the dismissal of Findlay's action prevented his ability to prosecute his counterclaims. He summarily mentions his "Abuse of Process" claim as being intricately intertwined with the tax complaint, but "[a] claim for abuse of process is not a compulsory counterclaim which must be brought in the underlying litigation." *Yaklevich v. Kemp*, 68 Ohio St.3d 294 (1994). Given that the claim could survive on its own, and given that there is no indication that his other claims could not be prosecuted on their own, Martens' argument is not well-taken. For all of these reasons his ninth assignment of error is overruled.

*First Assignment of Error*

{¶19} In Martens' first assignment of error, he argues that, for numerous reasons, the trial court erred by failing to grant his summary judgment motion against Findlay's tax complaint. He contends, *inter alia*, that Findlay did not comply with R.C. Chapter 718's provisions that were effective January 1, 2016, when Findlay attempted to collect taxes from him for the years of 2013, 2014, and 2015, he contends that Findlay did not exhaust its administrative remedies before filing the tax complaint, he contends that Findlay lacked jurisdiction to file its tax complaint, and he contends that the "estimated" amount that he owed was entirely inaccurate, based on no actual information, and therefore fraudulent.

**{¶20}** As we just determined in our resolution of the ninth assignment of error, *Findlay's tax complaint has been dismissed and there is no action pending against Martens*. Any ruling on Martens' arguments that the trial court erred in failing to grant his motion for summary judgment, or failing to dismiss a claim that is no longer pending on jurisdictional grounds, would be advisory and improper. *BFG Fed. Credit Union v. CU Lease, Inc.*, 9th Dist. Summit No. 22590, 2006-Ohio-1034, ¶ 38 ("Because we cannot provide them any relief, any ruling on their cross-assignment of error would be purely advisory and outside the role of this appellate court."). Stated differently, as there is no actual controversy remaining related to Findlay's tax claim, we could not render a judgment that could be carried into effect. *Stolzenburg v. Ohio Dept. of Job & Family Servs.*, 3d Dist. Auglaize No. 2-15-01, 2015-Ohio-2212, ¶ 7. Thus Martens' arguments attempting to undermine Findlay's tax claim, including his jurisdictional argument[6], are not well-taken. Accordingly,

---

[6] Notwithstanding Findlay's dismissal of its tax complaint, we note that Findlay Ordinance 194.02 codified the legislative changes to Revised Code Chapter 718 that were intended to apply to taxable years beginning on or after January 1, 2016. Findlay Ordinance 194.02 reads as follows:

**EFFECTIVE DATE**

**(A) Ordinance 2015-101, effective January 1, 2016, and corresponding changes to Ohio Revised Code 718, apply to municipal taxable years beginning on or after January 1, 2016. All provisions of this Chapter, 194, apply to taxable years beginning 2016 and succeeding taxable years.**

**(B) *Ordinance 2015-101 does not repeal Chapter 193 or the complementing rules and regulations for any taxable year prior to 2016. For municipal taxable years beginning before January 1, 2016, this Municipality shall continue to administer, audit, and enforce the income tax of this Municipality under Ohio Revised Code 718 and Chapter 193, together with all resolutions, rules, and regulations of this Municipality as they existed before January 1, 2016.***

Martens' contention that the trial court improperly denied his motion for summary judgment on Findlay's now-dismissed tax claim is not justiciable and his first assignment of error is overruled.[7]

*Second and Eighth Assignments of Error*

**{¶21}** In the second and eighth assignments of error, Martens argues that the trial court erred by granting Findlay and the Findlay parties summary judgment and dismissing Martens' counterclaims on the grounds of sovereign immunity.

Standard of Review

**{¶22}** "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

**{¶23}** We review a decision to grant a summary judgment motion on the basis of sovereign immunity de novo. *Pelletier* at ¶ 13. "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25.

---

(Emphasis added.) Findlay sought taxes *predating* the effective changes to R.C. Chapter 718, making the applicability of the changes to R.C Chapter 718 and Findlay Ordinances to taxes from 2013, 2014, and 2015, at best, questionable. However, regardless of the retroactivity of the changes to R.C. Chapter 718 and the Findlay Ordinances, there is no indication that failure to comply with R.C. 718 or Findlay Ordinance 194.02 would deprive the trial court of jurisdiction over the matter.

[7] As will be discussed, *infra*, many of the arguments that Martens makes in his first assignment of error will be relevant as they pertain to other assignments of error. Nevertheless, to the extent they are made in an attempt to undermine a ruling in a case that has been dismissed, they are not well-taken.

**{¶24}** Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Whittaker v. Lucas County Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, ¶ 8. Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.* quoting *Anderson* at 251-252.

**{¶25}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 282 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of

a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.* citing *Dresher* at 292.

## Sovereign Immunity Framework

**{¶26}** Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in Chapter 2744 of the Revised Code. *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 20. "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis." *Pelletier*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 15.

**{¶27}** The first tier of the sovereign-immunity analysis generally establishes that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). However, the immunity is not absolute. *See* R.C. 2744.02(B); *McConnell* at ¶ 21.

**{¶28}** In the second tier of the analysis, we consider the potential applicability of any of the five exceptions to immunity listed in R.C. 2744.02(B)(1)-(5), which would lift the immunity from the political subdivision. *Id*. at ¶ 22.

**{¶29}** Finally, if any of the exceptions to political subdivision immunity in R.C. 2744.02(B)(1)-(5) are applicable to remove immunity from the political

subdivision, then we move to the third tier of the analysis and consider whether immunity can be restored to the political subdivision based on the defenses enumerated in R.C. 2744.03.

Analysis

{¶30} To analyze Martens' claims on appeal that the trial court erred by finding that Findlay and its employees were entitled to sovereign immunity on his counterclaims, it is important to emphasize two facts at the outset: 1) Findlay is a political subdivision; and 2) Taxation is a power of local self-government and as such is a governmental function. *See Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146; *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 17-18.

{¶31} Because Findlay is a political subdivision, the first tier of the sovereign immunity framework is satisfied. The next issue to determine is whether Martens has raised a genuine issue of material fact regarding any of the immunity exceptions found in R.C. 2744.02(B)(1)-(5). Martens' allegations against Findlay that proceeded to the summary judgment stage were for Abuse of Process, Civil Conspiracy, and Replevin/Trespass/Conversion.

{¶32} A review of R.C. 2744.02(B)(1)-(5) provides no exceptions for the type of conduct Martens alleged in his counterclaims that survived to the summary judgment stage. Martens alleges no injuries caused by negligent operation of a

motor vehicle (R.C. 2744.02(B)(1)); Martens alleges no injuries caused by the negligent performance of acts with respect to *proprietary* functions (R.C. 2744.02(B)(2)); Martens alleges no injuries related to roadways (R.C. 2744.02(B)(3)); Martens alleges no injuries related to physical defects in buildings (R.C. 2744.02(B)(4)); and Martens alleges no injuries where civil liability is otherwise expressly imposed (R.C. 2744.02(B)(5)). Similar to the trial court, we find that none of the exceptions to immunity codified in R.C. 2744.02(B)(1)-(5) were alleged here sufficient to lift the cloak of sovereign immunity. As Martens has not established a genuine issue of material fact with respect to a sovereign immunity exception in the second tier of the sovereign immunity framework, we need not proceed to the third-tier of the immunity analysis to see if immunity can be restored to Findlay because Findlay is immune from Martens' claims.

{¶33} As to the Findlay parties individually, the trial court found that the individuals were entitled to immunity as well because there was no evidence that the employees acted outside the scope of their job duties, that they acted with malice, or that they acted in a wanton or reckless manner. Martens *strongly* disputes the trial court's findings on appeal, contending that because Findlay's employees "fabricated" their estimations of his tax revenue, they were acting recklessly and outside the scope of their employment.

{¶34} However, we agree with the trial court that while "procedurally deficient at times," there was no indication that the employees acted recklessly or engaged in conduct that fell outside their roles. These were not tax employees who attempted to do anything other than collect taxes, which is manifestly within their roles. *See Craycraft v. Simmons*, 2d Dist. Montgomery No. 24313, 2011-Ohio-3273 ("The question is not whether [defendant] could have done more. Rather, the question is whether the acts he did perform were within the scope of his employment."). As the Twelfth District Court of Appeals stated in *Curry v. Blanchester*, 12th Dist. Clinton No. CA2009-08-010, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald*, 5th Dist. Stark No. 2000CA00363, 144 Ohio App.3d 301, 306-307 (2001),

> **"In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'" It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment."** *Id*.

Given that the employees were attempting to perform their jobs, even if Martens feels the employees did their jobs improperly, we cannot find that they acted in a manner that would lift the cloak of immunity. There is no evidence of malice here.

{¶35} However, we emphasize that even if we assumed that the employees acted recklessly or outside the scope of their employment, the trial court also found

that Martens' claims for Civil Conspiracy and Replevin/Trespass/Conversion failed

for *an additional and entirely separate reason* other than sovereign immunity. With

regard to the Civil Conspiracy and Replevin/Trespass/Conversion claims, the trial

court found that they were barred by the statute of limitations *before even reaching*

*the question of sovereign immunity*.[8]

**{¶36}** Martens does not even mention the finding regarding the statute of

limitations in his brief to this Court and he does not show how the trial court's

determination on the statute of limitations issue was erroneous. Thus even if there

was somehow error with regard to sovereign immunity on these counts, these

allegations would not have survived summary judgment as summary judgment was

awarded on this *entirely separate basis*.

**{¶37}** In sum, because Martens did not establish any exceptions to immunity

in this matter, his second and eighth assignments of error are overruled.

*Tenth Assignment of Error*

**{¶38}** In his tenth assignment of error, Martens argues that even if his claims

did not meet a specific sovereign immunity exception, R.C. 2744.09(E) should have

prevented summary judgment here. Revised Code 2744.09(E) reads:

> **This chapter does not apply to, and shall not be construed to apply**
> **to, the following:**

---

[8] The trial court held, "Accordingly, as to Count II [Civil Conspiracy] and to Count III [Replevin, Trespass, and Conversion], the City of Findlay, Todd Richards, and Lydia Mihalik are entitled to summary judgment because these claims were filed outside the applicable statutes of limitations and an underlying viable tort claim must substantiate a claim of civil conspiracy."

* * *

**(E)   Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions.**

Martens contends that because he alleged that his rights to due process and equal protection were violated, R.C. 2744.09(E) should have prevented summary judgment on the sovereign immunity issue.

{¶39} Importantly, at the summary judgment stage, Martens had no remaining claims specifically regarding constitutional rights pending thus R.C. 2744.09(E) is entirely inapplicable. However, to the extent he had previously made claims that were dismissed, and to the extent that he now contends his claims surviving to the summary judgment stage contained constitutional issues, "'[v]ague assertions of constitutional rights violations are not enough to circumvent the purpose of the R.C. 2744.02 tort immunity provisions.'" *Pruce v. Sleasman*, 9th Dist. Lorain No. 11CA010088, 2012-Ohio-2427, ¶ 13, quoting *Poinar v. Richfield Twp.,* 9th Dist. Summit Nos. 20383, 20384, 2001 WL 951710, *4 (Aug. 22, 2001). While Martens may have produced *volumes* of filings and allegations, he did not actually present any evidence of constitutional violations that would circumvent the sovereign immunity framework. Therefore his tenth assignment of error is overruled.

*Third Assignment of Error*

**{¶40}** In his third assignment of error, Martens argues that the trial court erred by dismissing his claims for Fraud.

Standard of Review

**{¶41}** An order granting a motion to dismiss is subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. In reviewing whether a motion to dismiss should be granted, we accept as true all factual allegations in the complaint.

Analysis

**{¶42}** Martens alleged that Findlay and its employees committed Fraud in his initial complaint. He felt that when Findlay filed its complaint for taxes, the "estimated" income attested to was not supported by any actual evidence and was thus fraudulent.

**{¶43}** The trial court determined that Martens's initial Fraud claim was not specifically and cogently pled. Pursuant to Civ.R. 9(B), "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Because the trial court determined that Martens did not meet the heightened pleading standard for Fraud, he was ordered to amend his pleading within fourteen days.

**{¶44}** Martens did subsequently amend his Fraud allegation, but this too was rejected, and then ultimately dismissed, by the trial court.

> **Defendant's amended claim similarly fails to plead a claim of fraud with the particularity required by the rule. Defendant appears to consider the "fraud" perpetrated on him to be the assessment of the income taxes, when allegedly none are due. However, he points to no material misrepresentation, no knowledge of the material misrepresentation, no reliance, or other conduct that constitutes fraud under Ohio law. He appears to conflate "fraud" with his defense of the underlying collection claim.**

(Doc. No. 104).

**{¶45}** In our de novo review, we agree with the trial court. The depositions, which Martens cites extensively, establish how the estimate, or guestimate, of Martens rental income was made when he did not file taxes for 2013, 2014, and 2015.[9] While the estimates may not have been accurate, that does not make them fraudulent.

**{¶46}** Fraud is defined as (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4)

---

[9] Findlay employees took prior estimated tax returns and increased the income Martens purportedly received from $30-35,000 to $50,000. Findlay employees indicated that when they estimated income they always increased the amount from prior taxable years in an attempt to get taxpayers to file their actual returns so the true number could be determined. Because the $50,000 number was not tied to evidence other than the prior estimated returns and the employees assuming an increase, Martens contends that the number was "fraudulent."

-21-

with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). In order to establish a claim of Fraud, it is necessary for the party to prove all of the elements.

{¶47} Here, even accepting Martens' allegations as true, there is no evidence that employees of the Findlay tax department acted with the intent of misleading him or that he relied upon any misrepresentation. In fact, he contested the estimated taxes as soon as he was aware of them. As the trial court indicated, Martens' claims might have made good arguments against the actual amount he owed in taxes (if any), but his claims do not comprise legal Fraud, particularly at the heightened pleading standard. Therefore we find no error in the trial court's dismissal of his Fraud claims and his third assignment of error is overruled.

*Fourth Assignment of Error*

{¶48} In his fourth assignment of error, Martens argues that the trial court erred by dismissing his claim for Malicious Prosecution.[10]

Elements of Malicious Prosecution

{¶49} The Supreme Court of Ohio has established the following with regard to a claim of Malicious Prosecution.

---

[10] The same standard of review for the third assignment of error is applicable here.

> **In order to state a cause of action for malicious civil prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings.**

*Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264 (1996).

Analysis

{¶50} Martens contends that the trial court erred by granting Findlay's Civ.R. 12(B)(6) motion to dismiss his claim for "Malicious Prosecution" despite permitting his claim for "Abuse of Process" to proceed to the summary judgment stage. To support his argument, Martens relies on *Yaklevich v. Kemp*, 68 Ohio St.3d 294 (1994), wherein the Supreme Court of Ohio indicated in a footnote that "in some situations the same actions which support an abuse of process claim may also support a claim for malicious prosecution." Based on the *Yaklevich* case, Martens argues that the Supreme Court of Ohio effectively encouraged claims for Malicious Prosecution and Abuse of Process to be pled in the alternative. Martens thus contends that it was erroneous for the trial court to grant Findlay's motion to dismiss one claim while permitting the other.

{¶51} In determining that Martens' claim for Malicious Prosecution should be dismissed, the trial court reasoned as follows:

> **Defendant has failed to set forth sufficient facts for a claim of civil Malicious Prosecution. He does not plead facts that support the**

-23-

> **elements of the claim, but rather makes conclusory statements that include the language of the elements themselves.**
>
> **Defendant also asserts that the criminal cases against him are criminal Malicious Prosecution. However, as pointed out in Plaintiff's Motion to Dismiss, these criminal cases referred to in the Counterclaim are still pending, and therefore do not meet the elements of the test. Furthermore, the claim for criminal Malicious Prosecution fails for the same reason as the civil claim above; it sets forth only broad conclusory statements of the elements of the claim but not facts that in any way support the claim itself.**

 (Doc. No. 49).

**{¶52}** After our de novo review, we agree with the trial court. Even on appeal Martens simply baldly states that his Malicious Prosecution claim should have proceeded, but he fails to show how the trial court's ruling was improper.[11] Furthermore, at the time the trial court issued its ruling, his pending cases in Findlay that formed the basis for Martens' Malicious Prosecution claim had not been completed, and thus could not establish the requisite element of the claim. For these reasons, Martens' fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶53}** In his fifth assignment of error, Martens argues that the trial court improperly denied his request to amend his pleading and convert his counterclaim to a class action.

---

[11] We note that given the rulings on summary judgment, the claim would not have survived the summary judgment stage in any event.

-24-

Standard of Review

**{¶54}** We review the denial of a motion for leave to amend a pleading for an abuse of discretion. *Copen v. CRW, Inc*., 9th Dist. Wayne No. 15AP0034, 2017-Ohio-349, ¶ 16. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

**{¶55}** On December 10, 2020, Martens filed a motion for leave to file a second amended counterclaim (which would be his third counterclaim). As part of the motion, Martens sought to convert his counterclaim into a class action proceeding. The trial court rejected Martens' motion because discovery was nearing its completion deadline and motions for summary judgment were due a short time later.

**{¶56}** Much later, on January 18, 2022, Martens filed another attempt to convert his counterclaim into a class action while the summary judgment motions were actually pending. Martens wanted to include in his lawsuit other individuals who had tax cases filed against them without the statutory procedures under R.C. 718.11 being followed. Again, these provisions in the Ohio Revised Code applied to tax years beginning in 2016, while the suit instituted against Martens was for taxes from the years 2013, 2014, 2015.

{¶57} Martens' attempts to amend his complaint at such very late stages of the litigation were rejected by the trial court and we can find no abuse of discretion. Martens first attempt to convert the matter into a class action came over two years after the case had been filed against him and after he had already filed and amended his counterclaims. We find nothing arbitrary about the trial court's decision in this case. *See Copen*, *supra*. Therefore, Martens' fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶58} In his sixth assignment of error, Martens argues that the trial court erred by "failing to rule on and find in appellant's favor on the application of the conditions in R.C. 718.37."

{¶59} Martens filed a motion seeking damages under R.C. 718.37 on March 28, 2022. However, he withdrew the motion on March 31, 2022. *See* (Doc. No. 361). Because he withdrew his "Motion for Damages including Attorney Fees per ORC 718.37," we can find no error with the trial court failing to "rule in his favor." Therefore, his sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶60} In his seventh assignment of error, Martens argues that the trial court erred by dismissing his federal 42 USC 1983 claims in Counts 9, 11, 13, 14, 15, 16, 17, and 26 of his amended counterclaim. He contends that when the trial court

granted appellees' motion for judgment on the pleadings on those counts the trial court improperly disregarded numerous facts that Martens had pled in his complaint.

Analysis

**{¶61}** In his brief to this Court for his seventh assignment of error, Martens largely directs us to arguments that he made to the trial court in prior filings. As Findlay notes in its brief, the Rules of Appellate Procedure do not permit parties to "incorporate by reference" arguments from other sources. *McNeilan v. The Ohio Univ. Med. Ctr.*, 10th Dist. Franklin No. 10AP-472, 2011-Ohio-678, ¶ 7. Nevertheless, in the interest of justice we will address Martens' argument.

**{¶62}** In his amended counterclaim, which contained over 120 pages, Martens alleged numerous 42 USC 1983 claims against various parties. After motions were made by the counterclaim defendants, the federal claims were dismissed by the trial court. Martens now contends that the trial court erred by dismissing his federal claims; however, the only specific argument he makes in his brief is with regard to Count 17. He summarily contends that the remaining counts should be reinstated without arguing the specifics of each count even though the federal allegations were dismissed for numerous and varied reasons. For example, Count 11 was dismissed because the trial court determined that there was no cognizable claim for Abuse of Process under 42 U.S.C. 1983. *Moore v. WesBanco Bank, Inc.*, 612 Fed. Appx. 816, 823 (6th Cir.2015). Count 13 was dismissed

because it was based on a criminal statute that did not create a private cause of action. Count 15 alleged an equal protection argument but there was no averment that Martens was a member of any specific protected class. The trial court's dismissals on these counts, and the others not specifically argued by Martens in his brief, are supported and we can find no error with the dismissals.

{¶63} With regard to Count 17, Martens *does* specifically make an argument in his brief that the allegation was improperly dismissed, stating that the trial court improperly determined that the factual allegations in the complaint were insufficient to support the claim. Martens' claim in Count 17 was for "Selective Enforcement." The trial court determined that Martens failed to claim that he was part of an identifiable group or that the tax collection efforts were initiated for a discriminatory purpose, failing to establish any type of selective enforcement. The trial court also emphasized that Martens failed to make a prima facie showing that a similarly situated person outside of his category was not prosecuted. Thus the trial court determined that Martens failed to allege necessary facts to support his claim.

{¶64} In reviewing the only federal Count specifically argued by Martens beyond a passing mention in his seventh assignment of error, we can find no error with the trial court's dismissal. As to the rest of the Counts in the amended counterclaim, we similarly cannot find that the trial court erred in dismissing them

as there were valid reasons for dismissal. Therefore his argument is not well-taken, and his seventh assignment of error is overruled.

*Conclusion*

{¶65} For the foregoing reasons Martens' assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J., SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**